Lester Paul BROWN, Petitioner-Appellant,

v.

WARDEN, GREAT MEADOW CORRECTIONAL FACILITY, Respondent-Appellee.

No. 993, Docket 81–2363.

United States Court of Appeals, Second Circuit.

Argued April 6, 1982.

Decided June 23, 1982.

Certiorari Denied Nov. 8, 1982. See 103 S.Ct. 349.

Roger Bennet Adler, New York City, for petitioner-appellant.

Jane S. Meyers, Asst. Dist. Atty., Brooklyn, N. Y. (Elizabeth Holtzman, Dist. Atty., Kings County, Brooklyn, N. Y., of counsel), for respondent-appellee.

Before KEARSE and PIERCE, Circuit Judges, and LEVAL,* District Judge.

PIERCE, Circuit Judge:

In the absence of any indications to the contrary, a defendant charged with criminal behavior is presumed to be mentally competent to stand trial. However, once a defendant's competency has been called into question, either by the defendant or the prosecution expressly raising the issue, or through the presence of "warning signals" which cause the court to raise the question *sua sponte*, the burden is placed on the prosecution to prove that the defendant is mentally competent to stand trial.[1] In this petition for a writ of habeas corpus the petitioner-appellant contends that the quantum of proof—"by a preponderance of the evidence"—by which the New York State courts required the prosecution to prove his mental competency to stand trial, was constitutionally insufficient. He contends that, once the issue is raised, due process requires that before proceeding to trial the prosecution must establish a defendant's competency to stand trial by "a higher standard than preponderance of the evidence." (Appellant's Brief at 16). In the court below, Judge Sifton held that the New York State requirement that the prosecution prove a defendant's mental competency to stand trial by a preponderance of the evidence satisfied due process. We affirm.

---

* Hon. Pierre N. Leval, United States District Judge for the Southern District of New York, sitting by designation.

1. *See United States v. DiGilio*, 538 F.2d 972, 987 (3d Cir. 1976), *cert. denied sub nom. Lupo v. United States*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Zovluck*, 425 F.Supp. 719, 721 (S.D.N.Y.1977); *United States ex rel. Bornholdt v. Ternullo*, 402 F.Supp. 374, 377 (S.D.N.Y.1975); *see Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Wilson v. Bailey*, 375 F.2d 663, 668 (4th Cir. 1967).

*Facts*

On October 6, 1971, appellant Brown shot and killed Angelo Lopez at the request of his co-defendants, who paid him $200 cash, and promised to pay him an additional $2,000 after the killing, but did not do so. Brown was arrested for his crime within one week after its commission.

Appellant, who had a long history of mental illness and institutionalization, received several court-ordered psychiatric examinations while in custody following his arrest. Appellant was examined at Kings County Hospital on October 15, and October 20, 1971, and the psychiatrists concluded that he was mentally competent to stand trial. He was again examined at Kings County Hospital in November 1972. At that time a psychiatric report was prepared which reflected both the examinations performed in Kings County Hospital and a review of appellant's psychiatric records. Again, the judgment of the examining doctors was that appellant was mentally competent to stand trial. Finally, on April 6, 1973, appellant was evaluated, at the Kings County courthouse, by two court-appointed psychiatrists, Doctors Klaf and Vrejan. These doctors also found that appellant was mentally competent to stand trial.

Appellant's trial counsel moved, pursuant to New York Criminal Procedure Law § 730.30(2), to controvert the psychiatrists' determination that defendant was competent to stand trial. A hearing on that motion was held before Justice Michael Kern in the New York State Supreme Court, Kings County, on May 31, 1973. Dr. Klaf testified as a prosecution witness that appellant was a chronically schizophrenic individual, but that he was in a state of remission at the time of his examination on April 6, 1973. Although Dr. Klaf had not re-examined appellant during the intervening 7½ weeks, he stated that it was "very unlikely" that appellant would have reverted to a psychotic state in the interim, since, in his opinion, it generally takes three months for a person to decompensate. Appellant's counsel cross-examined Dr. Klaf, but offered no independent evidence on the issue of appellant's competency to stand trial. At the close of Dr. Klaf's testimony, Justice Kern found that Brown was competent to stand trial and scheduled the trial to commence on June 4, 1973.

On the scheduled trial date, after the jury was selected and sworn and both the prosecutor and defense counsel had made opening statements, appellant moved to withdraw his plea of not guilty and to enter a plea of guilty to the crime of murder in the second degree. After a hearing, appellant's guilty plea was accepted by the court. Subsequently, on September 13, 1973, Brown was sentenced to imprisonment for an indeterminate term of fifteen years to life.

It appears that in November 1973, shortly after appellant arrived at Great Meadow Correctional Institution, he was placed in medical isolation and was found to be mentally ill by two court-appointed psychiatrists. As a result, on November 19, 1973, Brown was certified to Matteawan state hospital by a judge of the New York State Supreme Court, Washington County. In April 1974, the order of commitment was reviewed and continued for one year. Brown remained at Matteawan until April 1975, when he was returned to Great Meadow Correctional Institution.

On December 29, 1975, appellant moved in the New York State courts to vacate his guilty plea, claiming that at the time it was entered he was not only mentally incompetent, but also incapacitated due to the ingestion of prescribed drugs. The motion was denied without a hearing by Supreme Court Justice John R. Starkey in an order dated May 25, 1976. Permission to appeal to the Appellate Division, Second Department, was granted, and by order dated December 4, 1978 the case was remanded to Justice Starkey with directions to make findings of fact and conclusions of law. Pursuant to this order Justice Starkey held a brief hearing, made oral findings, and again denied appellant's motion. This decision was affirmed by the Appellate Division on June 4, 1979. On July 3, 1979, leave to appeal to the New York State Court of Appeals was denied.

On July 1, 1980, appellant filed the petition herein for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Appellant claims therein that the state failed to properly establish his competency to stand trial; that New York's use of the preponderance of the evidence standard in proving competency to stand trial violated his constitutional right to due process; and that his plea of guilty was invalid since he was under the influence of incapacitating drugs and was not adequately apprised of the rights that he was waiving by so pleading—specifically that at trial the prosecution would be required to prove his guilt beyond a reasonable doubt, and that a jury verdict of guilty must be unanimous. On May 22, 1981, Judge Sifton conducted a hearing on appellant's claim that his plea was entered while under the influence of drugs which deprived him of his ability to make a rational and voluntary decision to plead guilty. In a memorandum opinion and order dated September 17, 1981, Judge Sifton denied appellant's application for habeas corpus relief. He subsequently granted Brown's motion for a certificate of probable cause, and Brown has appealed.

*Competency to Stand Trial*

██ The standard to be used in deciding whether a defendant is competent to stand trial is whether he " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975) (quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)).[2]

The federal courts that have considered the issue have been consistent in holding that mental competency to stand trial need be proved only by a preponderance of the evidence. *See United States v. DiGilio,* 538 F.2d 972, 988 (3d Cir. 1976), *cert. denied sub nom. Lupo v. United States,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Makris,* 535 F.2d 899, 906 (5th Cir. 1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977); *United States v. Shepherd,* 538 F.2d 107, 109 (6th Cir. 1976); *United States v. Zovluck,* 425 F.Supp. 719, 721 (S.D.N.Y.1977); *United States ex rel. Bornholdt v. Ternullo,* 402 F.Supp. 374, 377 (S.D.N.Y.1975). These courts reason that although a defendant cannot be convicted of a crime except upon proof beyond a reasonable doubt of every element of the crime with which he has been charged, *Mullaney v. Wilbur,* 421 U.S. 684, 685, 95 S.Ct. 1881, 1883, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1960), competency to stand trial is not an element of the offense with which a defendant is charged. *See, e.g., DiGilio, supra,* at 988; *Makris, supra,* at 906. These courts point out that the prosecution is not required to satisfy the beyond a reasonable doubt standard of proof as to every subsidiary issue which may arise during the course of a criminal proceeding. *See id.* For example, in *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972), the Supreme Court held that when a defendant challenges the admissibility of a confession, charging that it was unconstitutionally coerced, the confession is properly admitted if the prosecution proves by a preponderance of the evidence that it was voluntarily given. In *Lego,* the Supreme Court reasoned that the beyond a reasonable doubt standard need not be applied to voluntariness hearings because neither a defendant's confession nor its voluntariness constitute elements of the crime charged. *Id.* at 487, 92 S.Ct. at 625. In addition, the preponderance of the evidence standard provides the defendant protection adequate to satisfy the due process clause when applied in de-

---

**2.** For discussions of the type of understanding that must be present before a defendant can properly be brought to trial, *see United States v. David,* 511 F.2d 355, 360 (1975); *United States v. Zovluck,* 425 F.Supp. 719, 721 (S.D.N.Y.1977); *Wieter v. Settle,* 193 F.Supp. 318, 321–22 (W.D.Mo.1961). For the different standard that applies when a court is confronted with a defense of insanity at the time of the offense charged, *see United States v. Freeman,* 357 F.2d 606 (2d Cir. 1966).

termining the admissibility of evidence alleged to have been seized in violation of the Fourth Amendment, *United States v. Matlock*, 415 U.S. 164, 178 n.14, 94 S.Ct. 988, 996 n.14, 39 L.Ed.2d 242 (1974), and of co-conspirators' statements alleged to have been made during the course of, and in furtherance of, a conspiracy. *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969), *cert. denied sub nom. Lynch v. United States*, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

Further, we find the preponderance of the evidence standard to be an appropriate one to apply in mental competency hearings in light of the guidelines set out by the Supreme Court in its recent decisions. *See Santosky v. Kramer*, —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Under a preponderance of the evidence standard of proof, in order to find the existence of a disputed fact in favor of the party who has the burden of persuasion, a factfinder is required only to find " 'that the existence of [the] fact is more probable than its nonexistence.' " *In re Winship*, 397 U.S. 358, 371, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring) (quoting F. James, *Civil Practice* 250–51 (1965)). The standard of proof that applies in a given proceeding serves to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Id.* at 370, 90 S.Ct. at 1075. *See also Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). Thus, "in any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky v. Kramer*, —— U.S. ——, ——, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982). Whether the standard of proof to be applied in reaching a decision in a given proceeding is consistent with due process depends, therefore, on an evaluation of three factors: first, the private interests affected by the proceeding; second, the risk of error created by the State's chosen procedure; and third, the countervailing governmental interest which supports use of the challenged procedure. *Id.* 102 S.Ct. at 1394. When weighing these factors no presumption exists in favor of any particular standard of proof. *Id.* 102 S.Ct. at 1394–95.

Our consideration of the three criteria set forth in *Santosky* leads us to conclude that requiring the prosecution to prove a defendant's competency to stand trial by a preponderance of the evidence reflects a proper balancing, as between the defendant and society, of the risk of an erroneous conclusion that a defendant is competent when in fact he is not. First, while the private interests which are at stake when a court makes a determination as to a defendant's mental competency to stand trial are of constitutional significance, an incorrect determination that a defendant is competent will not necessarily lead, and may not even contribute, to an erroneous finding of guilt at trial. Once a defendant is found competent to stand trial, all of the other protections that surround that trial obtain, and the prosecution still must prove beyond a reasonable doubt every element of the crime with which the defendant has been charged. *In re Winship, supra*, 397 U.S. at 361, 364, 90 S.Ct. at 1071, 1072. Further, if a court determines prior to trial or acceptance of a plea that a defendant is mentally competent to stand trial, and if, later in the proceedings, changed circumstances indicate that the court's original decision may have been incorrect, or that the defendant's condition may have changed in the interim, the question can be reopened. *Drope v. Missouri, supra*, 420 U.S. at 181, 95 S.Ct. at 908; *see United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1100 (2d Cir. 1972), *cert. denied*, 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973); *United States v. Tesfa*, 404 F.Supp. 1259, 1265 (E.D.Pa.1975), *aff'd sub nom. United States v. Green*, 544 F.2d 138 (3d Cir. 1976), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977).

Further, a determination that a defendant is incompetent to stand trial is not necessarily of benefit to the defendant. Al-

though in New York a finding that a defendant is incompetent to stand trial no longer results in a potentially indefinite commitment to a mental institution, *see Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); N.Y. Crim.Proc.L. §§ 730.40, 730.50, 730.70, it will generally lead to confinement of the defendant even though there obviously has been no finding of guilt of the crime charged. *See* N.Y.Crim.Proc.L. §§ 730.40, 730.50.[3] In some instances, this period of confinement could ultimately prove to be longer than the term of imprisonment which the defendant would have served upon conviction of the crime charged.[4] *See Wieter v. Settle*, 193 F.Supp. 318 (W.D.Mo. 1961). A commitment to a hospital for the criminally insane also may place the defendant in a situation in which he is subjected to stricter custody, fewer privileges, and more unpleasant conditions than those to which he would be subjected in an ordinary prison. *See* Burt & Morris, *A Proposal for the Abolition of the Incompetency Plea*, 40 *U. of Chi.L.Rev.* 66, 88–89 (1972); Note, *Competence to Stand Trial: A Call for Reform*, 59 *J.Crim.Law, Criminology & Police Science*, 569, 570 (1968). In addition, such a finding does jeopardize a defendant's Sixth Amendment rights to be tried for the crimes charged, and to be tried as speedily as reasonably possible. *See In re Harmon*, 425 F.2d 916, 918 (1st Cir. 1970); Burt & Morris, *supra*, 40 *U. of Chi.L.Rev.* at 75.

While it is often true that neither the right to stand trial nor the right to be speedily tried is vigorously pursued by accused persons,[5] it is important to note that the issue of mental competency to stand trial is unique in that this right of the defendant can be raised not only by the defendant himself, but also by the prosecution, *cf.* 18 U.S.C. § 4244; *United States v. DiGilio, supra*, 538 F.2d at 986–87, and it *must* be raised by the court, on its own motion, whenever there is sufficient reason to doubt the defendant's competence. *Pate v. Robinson, supra*, 383 U.S. at 385, 86 S.Ct. at 842; *Arnold v. United States*, 432 F.2d 871, 873 (10th Cir. 1970); *Wilson v. Bailey*, 375 F.2d 663, 668 (4th Cir. 1967); *see Evans v. Kropp*, 254 F.Supp. 218, 222 (E.D.Mich. 1966). The issue can be so raised even though, as discussed, a finding that a defendant is not mentally competent to stand trial may, in fact, work to *his* detriment, rather than that of the state.

Finally, a rule that allows the prosecution to prove the mental competence of an accused by the preponderance of the evidence would, in light of the inexact nature of psychiatric evaluations and findings, be justifiable to avoid imposing an unduly onerous burden on the prosecution.

For all of the reasons stated, we conclude that a finding that a defendant is mentally competent to stand trial satisfies due process when the court finds that the

---

**3.** N.Y.Crim.Proc.L. § 730.50(1) provides that when a defendant charged with a felony is found incompetent to stand trial the court "must issue an order of commitment committing the defendant to the custody of the commissioner [of mental hygiene] for care and treatment in an appropriate institution for a period not to exceed one year from the date of such order." After a hearing, this commitment may be extended for subsequent periods of two years each, provided the total period of commitment does not exceed two-thirds of the maximum term of imprisonment authorized for the highest class felony charged in the indictment. N.Y.Crim.Proc.L. §§ 730.50(2), (3).

**4.** In this case the State's argument that appellant would have been worse off had he been found incompetent to stand trial seems strained since he is currently serving a sentence of imprisonment for a term of fifteen years to life.

However, we are determining the standard of proof which is constitutionally mandated in competency hearings and, in doing so, we must look to the general effect of our ruling as well as to the specific circumstances of the appellant herein.

**5.** In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court stated that the right to a speedy trial is

"generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Id.* at 519, 92 S.Ct. at 2186.

prosecution has carried the burden of proving the defendant's competency by a preponderance of the evidence. Thus, the New York State court's finding, on May 31, 1973, that appellant was competent to stand trial was based upon a constitutionally valid standard and will not be disturbed.

*The Plea Proceeding*

Appellant's additional claims are without merit and do not require extended discussion. The district judge conducted an evidentiary hearing with respect to appellant's claim that he was incompetent to plead guilty on June 4, 1973, due to the debilitating effects of medication ingested while he was in custody prior to the beginning of trial. He found that the medication did not render the defendant incapable of understanding the proceedings and forming a decision as to what course of action he wished to take. In fact, as Judge Sifton pointed out, defendant claimed only that the medication gave him the feeling that everyone was speaking very slowly at the plea hearing. Under Fed.R.Civ.P. Rule 52(a), findings of fact rendered by a district court after an evidentiary hearing (including those with regard to mental competency) must be affirmed unless found to be clearly erroneous. *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948); *see Indiviglio v. United States*, 612 F.2d 624, 630 (2d Cir. 1979), *cert. denied*, 445 U.S. 933, 100 S.Ct. 1326, 63 L.Ed.2d 768 (1980).

■ Appellant also claims that the proceeding in which he offered his plea of guilty to second degree murder was conducted in a manner which violated his constitutional rights. He claims that before accepting his plea the New York State judge was obligated to inform him that if he went to trial the prosecution would be required to prove him guilty beyond a reasonable doubt, and that any jury finding of guilt must be by a unanimous jury of twelve persons. It is true that the trial judge did not specifically inform appellant of these two facts. However, the judge did tell appellant that only he could waive a jury trial. In addition, appellant was present through the jury selection process, and could see for himself that there were twelve jurors plus two alternates in the box when the jury was sworn and during counsels' opening statements. In addition, the record shows that in the last sentence of his opening statement to the jury, defendant's counsel said, "I believe that after you have heard all the evidence you can reach no other conclusion but that the defendant is not guilty because of lack of proof of his inculpation beyond a reasonable doubt," and that after counsel completed their opening statements, the judge said to the jury that, "you remember at the very beginning of these procedures, Friday morning, I adequately went into the matter of proof beyond a reasonable doubt, presumption of innocence, the burden of proof being upon the prosecution, and I explained all of those elementary concepts to you." Presumably the defendant was also present to hear all of these statements.

In any event, Rule 11, Fed.R.Crim.P., which sets forth the minimal advice to be given a defendant during a plea allocution, does not require a federal district court judge to inform a defendant either that the prosecution must satisfy the beyond a reasonable doubt standard of proof, or that a jury verdict of guilty must be unanimous. This Court surely should not undertake to impose a federal constitutional standard upon state court proceedings that is higher than that which is imposed on the federal courts. *Hunter v. Fogg*, 616 F.2d 55, 61 (2d Cir. 1980); *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1100 (2d Cir. 1972), *cert. denied*, 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973). The advice given by the state judge to the appellant herein at the time he pleaded guilty was clearly adequate.

For all of the reasons stated, the order of the district court denying appellant's application for a writ of habeas corpus and dismissing his petition is affirmed.