COMMONWEALTH *vs.* JAMES CROWLEY.

Hampden. September 10, 1984. — November 28, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Competency to stand trial, Presumptions and burden of proof. *Due Process of Law,* Competency to stand trial.

Where it appeared that the judge at a criminal trial had only a minimal evidentiary basis for his conclusion that the defendant was competent to stand trial, and that the judge may have misapplied the burden of proof on this issue, this court reversed the defendant's conviction of assault with intent to commit rape. [398-400]

In a criminal proceeding the prosecution bears the burden of proof on the issue of the defendant's competency to stand trial, once the issue has been raised by the parties or by the judge on his own initiative. [400-401]

Where a criminal defendant's competency to stand trial is in issue, a judge's determination of competency based upon a preponderance of the evidence affords the defendant due process of law. [401-402]

INDICTMENT found and returned in the Superior Court Department on May 12, 1982.

A hearing on the defendant's competency to stand trial was held before *Raymond R. Cross,* J., and the case was tried before him.

The Supreme Judicial Court granted a request for direct appellate review.

*Maureen B. Brodoff* for the defendant.

*William W. Teahan, Jr.,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant appeals from his conviction of assault with intent to commit rape. He challenges the finding of the Superior Court judge that he was competent to stand trial. He argues that under G. L. c. 123, § 15 (*d*), the judge improperly imposed the burden of disproving competency on the defendant and then applied an unconstitutional standard in

finding him competent. He also contends that the evidence was insufficient to support a finding of competency. He argues further that the judge erred in failing to inquire into the defendant's competency after the competency hearing and during trial when defense counsel asserted that the defendant was unable to communicate rationally. The defendant also challenges the judge's exclusion of certain questions addressed by defense counsel to the sole witness at the trial.

We conclude that in light of the slim evidence of competency at the hearing, and the uncertainty as to where the judge placed the burden of proof, a new trial is required if it can be demonstrated that the defendant is now competent to stand trial.

The defendant was indicted on May 12, 1982, for assault with intent to commit rape. He pleaded not guilty to the charge on May 28, 1982, and was subsequently examined on several occasions to determine his competency to stand trial. On June 8, 1983, a competency hearing was held during which the judge heard testimony from Harry Michelson, M.D., a board-certified psychiatrist, Sara Eddy, Ed.D., a psychologist, and David P. Hoose, defense counsel. Dr. Michelson testified that the defendant was incompetent to stand trial. Dr. Eddy concluded that the defendant was competent to stand trial. Mr. Hoose testified as to the defendant's inability to communicate effectively with counsel. Based on this testimony, the judge found the defendant competent to stand trial. The following day, June 9, 1983, the defendant was tried and convicted of assault with intent to commit rape. He was sentenced to serve from four and one-half to ten years at the Massachusetts Correctional Institution, Walpole, and is presently serving his sentence at Bridgewater State Hospital.

Prior to the hearing on June 8, 1983, the defendant was examined on numerous occasions pursuant to G. L. c. 123, § 15, to determine his competency to stand trial and his criminal responsibility. Dr. Michelson filed a report dated July 19, 1982, in which he concluded that the defendant was incompetent to stand trial. On the morning of the hearing, Dr. Michelson conducted another competency examination and he again found

the defendant incompetent to stand trial. Pursuant to court order, Dr. Sara Eddy also conducted several examinations for competency and criminal responsibility. Dr. Eddy submitted reports dated August 31, 1982, December 2, 1982, and May 18, 1983, in which she concluded that the defendant was competent to stand trial.

The competency hearing was held on June 8, 1983. At its commencement, the Commonwealth stated that "[defense counsel] would agree the burden is on the defendant," to which defense counsel responded, "I don't quarrel with that . . . ." The defense then called the first witness, Dr. Michelson, who testified that the defendant was incompetent to stand trial. After Dr. Michelson's testimony concluded, the parties agreed that the Commonwealth would call its witness, Dr. Eddy, as the second witness. The judge allowed the Commonwealth to call Dr. Eddy "out of turn," because defense counsel's second witness, Mr. Hoose, was not in the courtroom. In order to save time, Dr. Eddy testified prior to Mr. Hoose, who was the third and final witness at the hearing. Mr. Hoose testified that the defendant was unable to communicate with him in any meaningful way or to assist in the preparation of his defense.

Doctors Michelson and Eddy agreed that the defendant suffered from a form of psychosis known as chronic paranoid schizophrenia. At the time of the hearing and trial, he was on medication administered to control the psychosis. Dr. Michelson concluded, based on his examinations on July 14, 1982, and on the day of the competency hearing, that the defendant was incompetent to stand trial because his psychotic manifestations were so pronounced that he was unable to have a rational understanding of the charges against him, to discuss his predicament with or otherwise assist defense counsel, or to pay attention to the proceedings. He stated that the defendant suffered from delusions, including the belief that he is a genius, that the police are trying to get him to "the court of lords," that he has a record of 2,000 knockouts in boxing, and that he is "St. James and a virgin because this is God's will."

Dr. Michelson did find that the defendant understood that he was in court to establish his competency and that he under-

stood the functions of the judge, district attorney, witnesses, and lawyers in a criminal proceeding. Dr. Michelson found, though, that the defendant was unable to focus his attention on matters discussed with him and became incoherent, bizarre, and paranoid as time went on. He concluded that even if one were to spend more time with the defendant, it is doubtful that he would be able to focus his attention to any greater degree. Dr. Michelson's finding of incompetency was grounded largely in his conclusion that the defendant was unable to assist his counsel in preparing a defense.

Dr. Eddy met with the defendant six or seven times prior to the hearing and evaluated him for competency three times between August, 1982, and May, 1983, at Bridgewater State Hospital. She testified that he displayed many of the classic symptoms of chronic paranoid schizophrenia, including distortion of perception, delusional thinking, and ideas of persecution. The defendant had exhibited symptoms of the disease for about twenty years. He was hospitalized at Bridgewater State Hospital between 1965 and 1969 and again in 1980, and had multiple admissions to Northhampton State Hospital dating back to 1964.

Dr. Eddy reported that she was able to discuss the case with him only in a very limited fashion and only after seeing him on a number of occasions. The defendant had a difficult time discussing the charges against him because he feared that if he said the words of the charge, he would incriminate himself. Dr. Eddy, therefore, devised a creative technique from which she was able to conclude that he had an accurate and rational understanding of the charges: she prepared a list of possible charges and asked the defendant to point to the one with which he was charged and to rank the charges in order of seriousness. The defendant was willing to perform these tasks, but refused to circle the crime with which he was charged or to speak about it.

Like Dr. Michelson, Dr. Eddy was able to elicit through conversations that the defendant had a general understanding of the judicial process and the roles of the various participants in that process. Dr. Eddy testified, however, that the question of

the defendant's ability to consult with his lawyer was "the most difficult issue in the matter of Mr. Crowley's competence." She explained that "it's my opinion that Mr. Crowley does have the capacity to cooperate with counsel and [*sic*] in a meaningful way in the preparation of a defense. However, I think that the task for counsel is an extremely difficult one. Mr. Crowley is very frightened of being incriminated and very frightened of talking about the incident for fear that [he] would incriminate himself, and I think that cooperation in a meaningful sense depends a great deal on the patience and ability to structure the interview. I can't underestimate how difficult this is. I don't wish to underestimate its difficulty. Mr. Crowley is easily agitated. He can become tangential. He becomes quite anxious, but I did find it was possible in a preliminary way to discuss matters of his case with him."

Dr. Eddy conducted a brief examination of the defendant on the day of the hearing and concluded that his mental status was essentially unchanged. He was oriented and understood the nature of the proceedings, but was somewhat more agitated, restless, and suspicious than he had been at Bridgewater. He was at times quite tangential and continued to have delusions. Even though he was medicated, the defendant still showed "symptoms of a serious and chronic mental illness." Dr. Eddy thought that his mental illness was somewhat exacerbated by being out of the structural setting of Bridgewater and confined in jail. Dr. Eddy concluded her direct testimony by opining that the defendant remained competent to stand trial with the qualification that "I must say that he was — he had more difficulty cooperating today than he had three weeks ago . . . ."

David Hoose, the defendant's attorney, also testified at the competency hearing. He had met with the defendant on several occasions between May, 1982, and June, 1983, and described his attempts to communicate with the defendant. Mr. Hoose stated that he had great difficulty in discussing the case with the defendant and concluded that his meetings with the defendant had not enabled him to prepare a defense "in any significant meaning of that term." On cross-examination, Mr. Hoose testified that the defendant's denial of his guilt coupled with his

refusal to talk in any substance about the allegations was unusual in the sense that, when the usual defendant denies having committed a crime, "we can go on to discuss whether there's an alibi or the likelihood of jurors or a judge believing the accusor's testimony. We have never gotten to that level with this case."

At the conclusion of the testimony, the judge ruled as follows: "Dr. Michelson, I have great confidence in, and he's been a mainstay of the Court here, and his opinions are not to be lightly disregarded, but by the same token, Dr. Eddy has made, I think, a rather good exposition of her examination and understanding of this defendant, and under the whole, I'm inclined to accept her opinion that this defendant is competent to stand trial, and so we'll have the trial tomorrow morning."

Before and during trial the following day, defense counsel raised the subject of the defendant's competence on several occasions. The defendant now argues that the judge erred in failing to make further findings during trial as to the defendant's competency, and also erred in certain evidentiary rulings. Under the view we take of the case, we find it unnecessary to consider events at the trial.

1. *Competency.* "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope* v. *Missouri,* 420 U.S. 162, 171 (1975). The United States Supreme Court has prescribed the test for competency to stand trial as whether the defendant has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'" *Dusky* v. *United States,* 362 U.S. 402 (1960). A competency hearing must be held "where there exists doubt as to whether the defendant satisfies [the *Dusky*] test . . . ." *Commonwealth* v. *Vailes,* 360 Mass. 522, 524 (1971). *Commonwealth* v. *Kostka,* 370 Mass. 516, 522 (1976). The judge, moreover, must raise the question sua sponte if sufficient reason exists to doubt the defendant's com-

petency. *Pate* v. *Robinson,* 383 U.S. 375, 385 (1966). *Commonwealth* v. *Hill,* 375 Mass. 50, 54 (1978). The judge must hold a competency hearing where there exists "a substantial question of possible doubt" as to whether the defendant is competent to stand trial. *Hill, supra,* quoting *Rhay* v. *White,* 385 F.2d 883, 886 (9th Cir. 1967). Failure to make an inquiry into competency under these circumstances would deprive the defendant of his constitutional right to a fair trial. *Pate* v. *Robinson, supra* at 385. *Commonwealth* v. *Vailes, supra.*

In *Commonwealth* v. *Hill, supra* at 54-55, we suggested the kind of information and evidence which might be relevant in order for the judge to determine before and during trial whether there exists a substantial doubt as to the defendant's competency to stand trial. There the available information included "the judge's observations of the defendant's demeanor and behavior at the trial, reports of psychiatric examinations of the defendant, statements to the judge about the defendant's conduct and mental condition, and the testimony of expert witnesses at the trial about the defendant's conduct and condition." *Id.*

An essential element of the test for competency is whether the defendant has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Dusky* v. *United States, supra. Commonwealth* v. *Hill, supra* at 54. During the competency hearing in the instant case, Doctors Michelson and Eddy both expressed some doubt as to whether Crowley had the capacity to communicate effectively with his lawyers. Dr. Eddy concluded that the defendant did appear to have the capacity to cooperate with counsel in preparation of a defense. She added, however, that "the task for counsel is an extremely difficult one . . . cooperation in a meaningful sense depends a great deal on the patience and ability to structure the interview. I can't underestimate how difficult this is." Mr. Hoose then testified at the hearing that he had experienced great difficulty in communicating effectively with the defendant. In finding the defendant competent to stand trial, the trial judge apparently relied at least in part upon Dr. Eddy's testimony that the defendant did have the capacity to cooperate with counsel. The judge indicated at trial

that he had also relied upon his own observations of the defendant's demeanor and upon Mr. Hoose's testimony.

2. *Burden of proof.* The weight of authority suggests that the prosecution bears the burden of proof of competency once the issue has been raised by the parties or by the judge on his own motion. See, e.g., *United States ex rel. Bilyew* v. *Franzen,* 686 F.2d 1238, 1244-1245 (7th Cir. 1982); *Brown* v. *Warden,* 682 F.2d 348, 349 (2d Cir.), cert. denied, 459 U.S. 991 (1982); *United States* v. *DiGilio,* 538 F.2d 972, 988 (3d Cir. 1976), cert. denied sub nom. *Lupo* v. *United States,* 429 U.S. 1038 (1977); *United States* v. *Makris,* 535 F.2d 899, 906 (5th Cir. 1976), cert. denied, 430 U.S. 954 (1977). Here the prosecution has conceded that the Commonwealth bears the burden of proof on this issue. This concession is well advised since, after considering the minority position under which a defendant has the burden of proving incompetency by a preponderance of the evidence, see, e.g., *Spencer* v. *Zant,* 715 F.2d 1562, 1567 (11th Cir. 1983) (applying Georgia law); *White* v. *Estelle,* 669 F.2d 973, 975 (5th Cir. 1982) (applying Texas law), cert. denied, 459 U.S. 1118 (1983), we conclude that the majority view is correct and that the burden of establishing competency rests upon the Commonwealth.

It is not clear from the record in the instant case, however, whether the judge placed the burden of proving competency on the prosecution, as is appropriate.[1] At the commencement of the hearing, the Commonwealth asked defense counsel whether he "would agree the burden is on the defendant," to which defense counsel responded, "I don't quarrel with that . . . ." Defense counsel then called the first witness, Dr. Michelson, who testified to his finding that the defendant was incompetent. The Commonwealth subsequently called its witness, Dr. Eddy, who reached the opposite conclusion. The colloquy prior to the hearing, coupled with the order of calling witnesses, suggests that the judge may have misapplied the

---

[1] Although defense counsel failed to object to the judge's allocation of the burden of proof at the hearing, we nevertheless consider this issue as a factor in determining whether or not the Commonwealth satisfied its burden of proof. *Infra* at 401-402.

burden. The judge made no written findings at the hearing and did not indicate in his oral finding of competency whether he had placed the burden on the prosecution. Nothing in the record of the competency proceedings suggests that the judge placed the burden of proving competency on the Commonwealth.

The substantive evidence at the hearing provides slim support for the judge's finding of competency. Two expert witnesses and a defense attorney testified at the hearing. The two experts, a psychiatrist and a psychologist, agreed that the defendant suffered from chronic psychosis but reached opposite conclusions as to the defendant's competency. The defense attorney described his difficulty in communicating with the defendant. The evidence at the competency hearing clearly demonstrated that the defendant suffered from mental disease or disability, was delusional, required medication, and experienced difficulty communicating about the circumstances of the case against him. Of the three witnesses who testified, only Dr. Eddy concluded that he was competent to stand trial, and she emphasized the difficulty his attorney would experience in communicating with the defendant. In light of the very minimal evidentiary basis for the judge's finding that the defendant was competent, considered together with the probable misapplication of the burden of proof on the issue, we conclude that there should be a new hearing on the competency of the defendant.

3. *Standard of proof.* Since the issue may arise at the new hearing, it is necessary for us to consider the standard of proof which the Commonwealth must satisfy in order to meet its burden of proving competency to stand trial. Under G. L. c. 123, § 15 (*d*), as appearing in St. 1973, c. 569, § 7, "[a] finding of incompetency shall require a preponderance of the evidence."[2] The preponderance of the evidence test, therefore, applies unless that standard is constitutionally infirm. The Federal courts have consistently held that competency to stand trial must be proved by a preponderance of the evidence. See,

---

[2] Since it is conceded, *supra* at 400, that the burden is on the Commonwealth to prove competency, nothing turns on the fact that that statute deals with a finding of incompetency rather than competency.

e.g., *Brown* v. *Warden,* 682 F.2d 348, 351-352 (2d Cir.), cert. denied, 459 U.S. 991 (1982); *United States* v. *DiGilio,* 538 F.2d 972, 988 (3d Cir. 1976), cert. denied sub nom. *Lupo* v. *United States,* 429 U.S. 1038 (1977); *United States* v. *Shephard,* 538 F.2d 107, 109 (6th Cir. 1976); *United States* v. *Makris,* 535 F.2d 899, 906 (5th Cir. 1976), cert. denied, 430 U.S. 954 (1977); *United States* v. *Zovluck,* 425 F. Supp. 719, 721 (S.D.N.Y. 1977). This is so because "competency to stand trial is not an element of the offense with which a defendant is charged . . . . [A]n incorrect determination that a defendant is competent will not necessarily lead, and may not even contribute, to an erroneous finding of guilt at trial. Once a defendant is found competent to stand trial, all of the other protections that surround that trial obtain, and the prosecution still must prove beyond a reasonable doubt every element of the crime with which the defendant has been charged." *Brown* v. *Warden, supra* at 351-352. Cf. *In re Winship,* 397 U.S. 358, 364 (1970) (proof beyond reasonable doubt required as to all elements of crime). Furthermore, a judge's determination that a defendant is competent to stand trial may be modified later if changed circumstances indicate that the defendant is no longer or never was competent to stand trial. *Brown, supra* at 352. Although at least one court has required proof of competency beyond reasonable doubt, see *Jolley* v. *State,* 282 Md. 353, 365 (1978), we adopt the reasoning of the United States Court of Appeals for the Second Circuit in *Brown* and hold that proof of competency by a preponderance of the evidence affords the defendant due process.[3]

4. *Evidence.* It is unnecessary for us to rule upon the evidentiary issues raised by the defendant since they are unlikely to occur on retrial.

---

[3] Competency must, of course, be distinguished from the requirement in criminal cases that the prosecution prove the defendant's criminal responsibility beyond a reasonable doubt. See *Commonwealth* v. *Kostka,* 370 Mass. 516, 526 (1976); *Commonwealth* v. *Mutina,* 366 Mass. 810, 815 n.2 (1975). Criminal responsibility goes to the merits of the Commonwealth's case and is decisive in a finding as to the defendant's guilt. The higher standard is mandated in issues affecting elements of the crime charged. See *In re Winship,* 397 U.S. 358, 361 (1970).

The judgment is reversed, the verdict is set aside, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*