Commonwealth *v.* Chatman.

## COMMONWEALTH *vs.* DEMOND CHATMAN.

Suffolk. May 10, 2013. - September 3, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & DUFFLY, JJ.

*Homicide. Practice, Criminal,* New trial, Competency to stand trial, Presumptions and burden of proof, Affidavit, Capital case. *Evidence,* Competency, Presumptions and burden of proof, Expert opinion. *Witness,* Expert. *Due Process of Law,* Competency to stand trial.

A Superior Court judge erred in denying, without an evidentiary hearing, a motion for a new trial in which a defendant convicted of murder in the first degree claimed that he had been incompetent at the time of trial, where the judge failed to assign the correct burden of persuasion to the defendant, i.e., that the defendant establish at the hearing on his motion for a new trial by a preponderance of the evidence that the Commonwealth would not have prevailed had the issue of his competency been raised at trial [333-336]; where the judge relied on an affidavit from trial counsel that was not intended to address the question of the defendant's competence at trial [336-337]; where the record did not warrant the judge's conclusion concerning the opinion of a forensic psychologist as to the defendant's mental health history at the time of trial [337-338]; where the issue of competency as presented in the circumstances of the case would have benefited from an evidentiary hearing, given that the issue was complicated and important, as well as seldom seen and an undeveloped area of law [338]; and where the defendant made an adequate showing to warrant an evidentiary hearing, i.e., that he had a mental illness that would have concealed itself from the judge and counsel and that the Commonwealth might not have proved he was competent [338-339].

INDICTMENT found and returned in the Superior Court Department on June 5, 2000.

The case was tried before *Barbara J. Rouse,* J., and a motion for a new trial, filed on May 5, 2008, was heard by her.

*Edward L. Hayden* for the defendant.

*Cailin M. Campbell,* Assistant District Attorney, for the Commonwealth.

SPINA, J. The defendant was convicted on January 24, 2002, of the deliberately premeditated murder of his mother. On May 6,

2008, he filed a motion for a new trial alleging that he was not competent to stand trial. The motion was denied after a nonevidentiary hearing. The defendant appealed his conviction and the denial of his motion for a new trial. On appeal he asserts error in the failure to hold an evidentiary hearing on his motion for a new trial and the denial of that motion. He also requests that we exercise our power under G. L. c. 278, § 33E, and grant him a new trial or reduce the degree of guilt. We vacate the denial of the motion for a new trial and remand that matter for an evidentiary hearing. We defer consideration of the direct appeal pending a new decision on the motion for a new trial.

1. *Background.* The jury could have found the following facts. In February, 2000, the defendant lived in the home of his mother's aunt in the Roxbury section of Boston. The defendant had been alienated from his mother for years, and had become openly hostile toward her. Family members attributed this to jealousy over his mother's relationship with her two young daughters, the defendant's half-sisters. On February 7, one of the defendant's half-sisters telephoned the aunt's apartment. The defendant answered the telephone and then passed it to the aunt without speaking to his sister. The sister heard the defendant say in the background, "Why do they always have to call here?" She later told the victim what the defendant had said.

Sometime between 11 A.M. and noon on February 10, 2000, the defendant told the aunt that he was going to "work out" at Franklin Park. He asked where she kept the mop and bucket, as he wanted to clean his room when he returned. The aunt, who had been watching television, went out at 2 P.M. to visit friends. At 2:30 P.M. the defendant telephoned 911 and reported that his mother had been shot. He directed police to the aunt's apartment address. Police arrived shortly thereafter. An emergency medical technician attending to the victim noticed that rigidity had set in. A pathologist opined that rigidity would begin to set in between two to six hours after death. Thus, death most likely occurred between 8:30 A.M. and 12:30 P.M. The pathologist also determined that the victim was killed by a single gunshot wound to the back of her neck. The bullet severed her spinal cord, killing her instantly. It then exited her body through her left cheek. Neither the bullet nor the murder weapon was found.

The case against the defendant was circumstantial. Physical evidence indicated that the victim's body had been moved from the defendant's bedroom to the aunt's bedroom, where it was first observed by police. The evidence also supported an inference that the defendant mopped the floor in his bedroom and put blood-soaked items of clothing in the washing machine. Washcloths also had been used to soak up blood. The defendant left bloody footprints on the bathroom floor and inside the bathtub. The victim's blood was found on a fan that the aunt had seen on the floor outside the defendant's closed bedroom door. She moved the fan into the living room when she left the apartment to visit friends. Deoxyribonucleic acid testing indicated the victim's blood was on the defendant's sneaker, his clothes, the bottom edge of his bedroom door, his mattress, and the shower curtain liner in the bathtub. The defendant left a bloody fingerprint on a wall in his bedroom.

A .38 caliber handgun and live rounds of .38 caliber ammunition were found in the defendant's bedroom. In addition, .25 caliber ammunition, .45 caliber ammunition, and twelve-gauge shotgun cartridges were recovered from his bedroom. The defendant, who had a valid firearm identification card, was not charged with violation of any firearms law. Neither the handgun nor the ammunition was connected with the killing, but they were admitted in evidence for the limited purpose of showing that the defendant was familiar with the operation of a handgun.

The defendant made several statements to police. He denied killing his mother, but details in his statements were inconsistent with the physical evidence. For example, although his bloody footprints were found in the bathroom, he insisted he never set foot in the bathroom from the time he discovered his mother's body until police arrived. In addition, because the entrance and exit wounds on the victim's body were not readily apparent, the jury could infer the defendant would not have known that his mother had been shot, as he stated in his 911 call, unless he was present at the time of shooting. The defendant also told police, "I'm a man and if it means I get the death penalty or life in prison, I'll take it like a man."

The Commonwealth theorized that the victim went to the aunt's home to confront the defendant about what her daughter

overheard him saying three days before. The defendant let her into the apartment, as she did not have a key, and shot her. The aunt was unaware that the victim had arrived, and she did not hear the gunshot because she was in a different part of the apartment watching television.

The defense at trial was that the defendant's poor relationship with his mother notwithstanding, he did not kill her. Trial counsel aggressively challenged the forensic evidence, and maintained that even if it were accurate, it did not prove the defendant killed his mother.

2. *Motion for a new trial.* In his motion for a new trial the defendant alleged that he was incompetent at the time of his trial. He filed various affidavits in support of his motion. One affiant, Dr. Robert H. Joss, a forensic psychologist, opined that the defendant suffers from "a long standing mental disease that is best described as a schizoaffective disorder with prominent paranoid delusions. This disease is a substantial disorder of thought, mood and perception which grossly impairs [the defendant's] judgment, behavior, and capacity to recognize reality." Dr. Joss further opined that the defendant exhibited this disorder before and during trial, and although he was aware of the charges and possible penalties he faced, the defendant did not have a rational understanding of the proceedings against him and therefore "was unable to consult with [trial counsel] with a reasonable degree of rational understanding as evidenced by his unwillingness to disclose his past psychiatric history, his assumption that [trial counsel] was possibly working with the [d]istrict [a]ttorney to sell him out, and that [trial counsel's] facial expressions dictated that he could not be trusted and that he could read his (Mr. Chatman's) mind."[1] Dr. Joss noted that records of jails where the defendant was held pending trial indicated that "he alternately denied any history of treatment for mental health problems and then reported he did not want to discuss his history due to prior experiences with mental health

---

[1]Among the materials Dr. Joss reviewed when preparing his report were affidavits of acquaintances and relatives of the defendant, and of the attorney who was the "second chair" for the defense at trial. These affiants offered observations of the defendant at and around the time of trial. Dr. Joss also reviewed the affidavit of trial counsel but did not interview him. These affidavits will be discussed later in this opinion.

professionals. He was seen as suspicious and very guarded although his thoughts were organized." Only one page of those records was filed with the motion for a new trial.

Dr. Charles E. Drebing, a neuropsychologist who administered a battery of tests on the defendant, submitted an affidavit in which he opined that since childhood the defendant has demonstrated symptoms of a delusional disorder, or possibly a schizoaffective disorder or psychosis not otherwise specified. In addition, test results indicated that the defendant's intellectual functioning falls in the low average to borderline retarded range.

The Commonwealth did not offer any expert affidavit. It offered the affidavit of the defendant's trial counsel, which originally was offered by the defendant in support of his motion for funds for a psychologist. In his affidavit, trial counsel stated that he had consulted with a psychiatrist about possible defenses of lack of criminal responsibility and diminished capacity, but he did not pursue these defenses because the defendant repeatedly denied killing his mother. Trial counsel also stated that it was not brought to his attention that the defendant had a history of treatment for mental health issues.

During a hearing on January 9, 2009, on a motion filed by the Commonwealth, the defendant shouted at the judge, calling her a "racist bitch." The judge ordered a competency evaluation. Dr. Naomi Leavitt, a forensic psychologist at the court clinic, reported that the defendant presented a "complicated diagnostic picture." Her diagnosis was similar to that of Drs. Joss and Drebing. She concluded that the defendant was competent as long as he did not have to testify or appear in court, but that he was likely incompetent if he had to participate in a more complex proceeding such as an evidentiary hearing. Dr. Leavitt recommended that the defendant be given medications in an effort to ameliorate his symptoms, noting that he had benefited from psychopharmacological intervention in the past.[2] After a hearing on Dr. Leavitt's report, arrangements were made in August, 2010, for the defendant to begin taking prescribed medication. His condition improved significantly as a result.

On November 17, 2010, the judge ordered Dr. Leavitt to

---

[2]The defendant asserts that he was unmedicated during trial.

conduct another competency evaluation and file her report no later than December 8, 2010. Dr. Leavitt submitted her report to the court in which she opined that the defendant was "competent to engage actively, meaningfully, and rationally in the legal proceeding before him." The judge heard arguments on the defendant's motion for a new trial on March 3, 2011. The motion was denied by written decision on October 6, 2011.

In her memorandum of decision, the motion judge, who also was the trial judge, concluded that the defendant had not made an adequate showing that he was incompetent at the time of trial to warrant either an evidentiary hearing or a new trial. She found that the details of the defendant's history of mental illness alone did not establish incompetency at the time of trial. The judge observed that Dr. Joss's conclusions in large part were based on the defendant's recollections of the trial, which had occurred four years earlier. She also expressed concern about a statement in Dr. Joss's report that, while in confinement first at the Suffolk County jail and then at the Middlesex County jail awaiting trial, the defendant "was observed to be depressed with suicidal ideation." The judge found that this statement had absolutely no support in the record. She relied on the only record from the Suffolk County house of correction filed with the motion for a new trial. That record, made on November 21, 2000, stated that the defendant was "stable at present. No acute mental health issues, fully alert & oriented, mood irritable, broad affect, . . . thoughts organized, mildly suspicious, but does not appear of psychotic nature, no indication of risk to self/others due to MMI. No planned follow-up. [Inmate] agrees to contact mental health if necessary." The judge also found it telling that Dr. Joss failed to interview trial counsel, who was in the best position to describe the defendant's ability to understand the nature of the proceedings against him and whether he was capable of assisting in his defense.

The judge determined that the affidavits of the defendant's acquaintances and relatives were of little or no value because these individuals were not qualified to render an opinion on the defendant's competency, and they offered no details about the defendant's ability to assist trial counsel or his capacity to

understand the nature of the proceedings against him.[3] She also determined that the affidavit of counsel who was "second chair" for the defense presented little value because the lawyer admittedly was not involved in the preparation of the defense, had limited experience, and did not address the defendant's ability to consult with trial counsel.

The judge observed that trial counsel's affidavit was "conspicuously silent" about the defendant's alleged inability to consult with him or assist in his defense. She inferred from his affidavit "that there was no indication from his interactions with the defendant that [the defendant] was unable to consult with [trial counsel] or unable to assist in his own defense." She found this absence of concern as to the defendant's competence from an "experienced, capable attorney" to be a fact that was entitled to "considerable weight."

Finally, the judge relied on her own experience as a trial judge (seventeen years at the time of trial) and her observations of the defendant at the time of trial, both of which gave her no pause about the defendant's competency during trial. She cited three instances in the trial transcript that specifically reflected the occurrence of conferences between the defendant and trial counsel.

*Discussion.* "The trial judge upon motion in writing may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). See *Commonwealth* v. *Murray*, 461 Mass. 10, 19 (2011). The defendant has the burden of proving facts upon which he relies in support of his motion for a new trial. *Commonwealth* v. *Brown*, 378 Mass. 165, 171 (1979), quoting *Commonwealth* v. *Bernier*, 359 Mass. 13, 15 (1971). *Commonwealth* v. *Guerro*, 14 Mass. App. Ct. 743, 746 (1982). Where the appeal from the denial of a motion for a new trial is considered with the direct appeal from a conviction of a capital crime, we review the denial of that motion to determine if the judge committed an abuse of discretion or other error of law and, if so, whether such error created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Leng*, 463 Mass. 779, 781 (2012). A trial judge is entitled to rely on her knowledge of what occurred at trial when

---

[3]At the hearing on the motion for a new trial, appellate counsel acknowledged the limited probative value of these affidavits.

ruling on a motion for a new trial. See *Commonwealth* v. *Grace,* 370 Mass. 746, 752-753 (1976). We extend special deference to factual determinations made by a motion judge who also was the trial judge, as here. *Commonwealth* v. *Grace,* 397 Mass. 303, 307 (1986).

The decision whether to hold an evidentiary hearing on a motion for a new trial is "left largely to the sound discretion of the judge." *Commonwealth* v. *Stewart,* 383 Mass. 253, 257, 259 (1981). An evidentiary hearing is required only where a "substantial issue" has been raised. "In determining whether a 'substantial issue' meriting an evidentiary hearing . . . has been raised, we look not only at the seriousness of the issue asserted, but also to the adequacy of the defendant's showing on the issue raised." *Id.* at 257-258. See *Commonwealth* v. *Smith,* 459 Mass. 538, 556-557 (2011).

The defendant argues that the judge erred by assigning to him the burden of establishing by a preponderance that he was not competent to stand trial. He contends that he was required to show only that there was "a substantial question of possible doubt" as to his competence to stand trial. *Commonwealth* v. *Crowley,* 393 Mass. 393, 399 (1984), quoting *Commonwealth* v. *Hill,* 375 Mass. 50, 54 (1978). Once that showing is made, he continues, the Commonwealth must establish by a preponderance of the evidence that he was competent to stand trial.[4] *Commonwealth* v. *Crowley, supra* at 400. The Commonwealth, without citation to any particular authority, asserts that the judge correctly assigned the burden of proof to the defendant to establish by a preponderance of the evidence that he was not competent at the time of trial. Neither party is correct.

The cases on which the defendant relies all involve questions of competency that were apparent, or arguably apparent, *at trial.* See, e.g., *Commonwealth* v. *Hilton,* 450 Mass. 173, 179

---

[4]"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Commonwealth* v. *Prater,* 420 Mass. 569, 573 (1995), quoting *Drope* v. *Missouri,* 420 U.S. 162, 171 (1975). The burden of proof at trial requires competence to be established by a preponderance of the evidence, and that burden rests with the Commonwealth. *Commonwealth* v. *Crowley,* 393 Mass. 393, 401-402 (1984).

(2007) ("The Commonwealth's burden of proof in a *competency proceeding* is by a preponderance of the evidence" [emphasis added]). This case does not involve a competency proceeding, and this is not a case in which the defendant is alleging that circumstances *at trial* gave rise to "a substantial question of possible doubt" as to whether the defendant was competent to stand trial, requiring the judge sua sponte to conduct a competency hearing. *Commonwealth* v. *Crowley, supra.* See *Commonwealth* v. *Robbins,* 431 Mass. 442, 447-449 (2000); *Commonwealth* v. *Hill,* 375 Mass. 50, 62 (1978). Here, there seemingly was no indication at trial that the defendant might not be competent. Contrast *Commonwealth* v. *Simpson,* 428 Mass. 646, 652 (1999). The unusual circumstances of this case, where the evidence of the defendant's alleged mental state was not discoverable at the time of trial precisely because of the nature of his mental illness, are more analogous to one involving newly discovered evidence. This case involves the review of a motion for a new trial, which places the question of competence in an entirely different posture. See *id.* at 653-654.

As we set out to identify the burden of proof at the hearing on the motion for a new trial in this case, we are assisted by our jurisprudence on motions for a new trial involving questions of suppression of evidence seized pursuant to a search warrant and suppression of evidence seized during a warrantless search. If at trial the defendant had the burden of proof on the relevant issue, then at the hearing on his motion for a new trial he must establish by a preponderance of the evidence that he would have prevailed on the issue had it been raised at trial. See *Commonwealth* v. *Banville,* 457 Mass. 530, 534, 539 (2010) (defendant alleging ineffective assistance of counsel for failing to raise certain issues in motion to suppress evidence seized pursuant to warrant[5] must show he would have prevailed on such motion). In contrast, if at trial the Commonwealth had the burden of proof on the relevant issue, then at the hearing on his motion for a new trial the defendant must establish by a preponderance of the evidence that the Commonwealth would not have prevailed

---

[5]The burden of establishing the illegality of a search conducted pursuant to a warrant is on the defendant. See *Commonwealth* v. *Taylor,* 383 Mass. 272, 280 (1981).

on the issue had it been raised at trial. See *Commonwealth* v. *Comita*, 441 Mass. 86, 87, 93 (2004) (where defendant alleges ineffective assistance of counsel in motion for new trial based on counsel's failure to file motion to suppress evidence seized in warrantless search,[6] he must establish that Commonwealth would not have been able to prove warrantless stop was constitutional, even though that burden belonged to Commonwealth had suppression motion been filed timely). Here, if the question of the defendant's competence had been raised at trial, the Commonwealth would have had the burden to establish by a preponderance of the evidence that the defendant was competent. Consequently, at the hearing on his motion for a new trial the defendant must establish by a preponderance of the evidence that the Commonwealth would not have prevailed had the issue been raised at trial.[7] We conclude that the judge assigned the incorrect burden of persuasion to the defendant.

The judge's analysis of the need for an evidentiary hearing (as well as of the merits of the motion for a new trial) was informed by the burden of proof that she applied. We turn to that analysis. The judge indicated she placed "considerable weight" on the inference she drew from trial counsel's affidavit to the effect that if there had been a problem in securing the defendant's involvement in the defense at trial, trial counsel would have so stated. Appellate counsel objected to the Commonwealth's use of this affidavit, asserting that it originally had been offered by him for the purpose of supporting the defend-

---

[6]The burden of establishing the legality of a warrantless search rests with the Commonwealth. See *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 303 (1979), *S.C.*, 419 Mass. 1006 (1995).

[7]The difference between the burden of establishing by a preponderance of the evidence that the Commonwealth would not have been able to prove competence, and the burden of establishing by a preponderance of the evidence that the defendant was incompetent at the time of trial, is not great; however, there are important, though subtle, distinctions between the two. The former involves proof of a negative; the latter involves proof of a positive. The former also is less onerous. By way of illustration, the defendant need only persuade the judge that the weight of the evidence of competence and the weight of the evidence of incompetence are in equipoise, in which case the defendant would establish that the Commonwealth would have failed to meet its burden. Of course, the defendant would prevail handily if he were to exceed his burden and establish by a preponderance of the evidence that he was not competent at the time of trial.

ant's motion for funds for a psychologist, and never was intended
to address the question of the defendant's competence at trial.
Appellate counsel also stated in a sworn opposition that on two
occasions he had requested an affidavit from trial counsel to
support the motion for a new trial, but trial counsel never provided
such an affidavit. The affidavit trial counsel did provide was
intended only as support for a request for funds for a psycholo-
gist for use in preparing the motion for a new trial. Given the
context in which trial counsel's affidavit was prepared, it could
not have supported an inference about the relationship between
trial counsel and the defendant during trial. Although the judge
could have relied upon an appropriate affidavit from counsel
addressing this point, see Mass. R. Crim. P. 30 (c) (3), as ap-
pearing in 435 Mass. 1501 (2001), we conclude that this af-
fidavit was not appropriate to support the inference drawn. We
note that the inference figured prominently in the judge's analysis.

Another prominent aspect of the judge's analysis was her
rejection of Dr. Joss's statement that jail records indicated the
defendant was observed to be "depressed with suicidal ideation"
around the time of trial. The judge concluded that this statement
in Dr. Joss's report was without record support, and it detracted
notably from the weight she would give to Dr. Joss's opinion
and his report generally. The judge ultimately determined that
the defendant failed to present "reliable" evidence that he was
incompetent at the time of trial. The jail record on which the
judge relied, quoted above and dated November 21, 2000, was
the only page of pretrial jail records that appellate counsel at-
tached to the motion for a new trial. But there were many more
pages. The report of Dr. Joss indicates that he reviewed a
considerable volume of jail records from Suffolk and Middlesex
Counties that covered the period from April 27, 2000, through
April 11, 2005, but appellate counsel did not provide them to
the judge. Nevertheless, Dr. Leavitt indicated in her report that
she reviewed the Suffolk County jail records (there is no men-
tion of the Middlesex County jail records in her inventory of
available information) dating from April 27, 2000, to November
21, 2000. She quoted the same sentence from Dr. Joss's report
that the judge criticized. She indicated that, based on her review
of the documents, Dr. Joss's summary of the defendant's his-

tory was accurate. Thus, the record suggests that the information on which Dr. Joss relied in making this statement exists, and that it is contained in records other than the record provided to the judge (and to us). We need not assign fault, as our review under G. L. c. 278, § 33E, focuses upon error, regardless of the source or sources, and its likely effect on the decision maker. See *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). Nevertheless, the record before us does not warrant the conclusion that Dr. Joss's assessment of the defendant's mental health history at the time of trial was flawed in the manner articulated by the judge.

The defendant contends that the judge did not give adequate weight to the defendant's history of mental illness. This appears to be the result of his misunderstanding of the burden of proof. In any event, the judge correctly concluded that a history of mental illness alone does not determine the question of competence to stand trial, but is a factor for consideration. See *Commonwealth* v. *Robbins*, 431 Mass. 442, 448 (2000). Here, however, the defendant postulates double duty for such evidence. He first contends that it supports his claim of incompetence, which it may, but that is a question of fact for the judge. More importantly, at least for the narrower question involved, the defendant contends that his particular mental illness, for which there is support, operated to conceal itself from trial counsel and the judge. If true, this might explain why no one detected a problem. The issue of competence, as presented in this case, is a complicated and important one. Because it is an issue that is seldom seen and the law in this area is somewhat undeveloped, it is an issue that would benefit from an evidentiary hearing.

We are satisfied that in this unusual case the issue is serious and the defendant has made an adequate showing to warrant an evidentiary hearing. He has made an adequate showing that he had a mental illness that would have concealed itself to the judge and counsel. He also made an adequate showing that the Commonwealth might not have proved he was competent. This is particularly so where the Commonwealth offered no expert evidence that the defendant was competent at the time of trial. The only evidence that the defendant was competent appears to be the judge's reference to three conferences between the defend-

ant and counsel during trial (about which the record reveals little), and her own observations of the trial. In contrast, Dr. Leavitt, whose reports on the defendant's competence in 2010 appear to have been credited by the judge, made a diagnosis of long-standing mental illness virtually identical to that of Dr. Joss. She opined that the defendant was not able to assist appellate counsel at a full evidentiary hearing on the motion for a new trial. Like Dr. Joss, Dr. Leavitt determined that the defendant's inability to trust his lawyer was a significant factor in her reports. Although the opinions of Drs. Joss and Leavitt regarding the defendant's competence addressed very different times and proceedings, the similarities and parallels raise concerns that are sufficiently serious to warrant an evidentiary hearing on the defendant's motion for a new trial.

At the hearing, testimony of trial counsel would be desirable, particularly where the Commonwealth has elected to offer no expert testimony. Trial counsel may be able to provide relevant evidence as to the defendant's ability to understand the nature of the case against him and his ability to assist in the defense, as well as how the defendant helped shape the defense, if at all. We express no view about what the outcome of the hearing should be, but because of the confusion at the hearing on the motion for a new trial as to the burden of proof, we repeat our earlier explication that the burden is on the defendant to establish by a preponderance of the evidence that the Commonwealth would not have been able to prove he was competent to stand trial.

The order denying the motion for a new trial is vacated, and the matter is remanded for an evidentiary hearing. We defer our review of the entire case under G. L. c. 278, § 33E, pending the decision on the motion for a new trial.

*So ordered.*