## Commonwealth *vs.* John A. Serino.

Middlesex. December 7, 2001. - March 28, 2002.

Present: Marshall, C.J., Ireland, Spina, Cowin, & Sosman, JJ.

*Homicide. Practice, Criminal,* Voluntariness of statement, Admissions and confessions, Voir dire, Instructions to jury, Assistance of counsel, Psychiatric examination, Capital case. *Evidence,* Admissions and confessions, Consciousness of guilt. *Constitutional Law,* Assistance of counsel. *Mental Impairment. Malice. Intent.*

At a murder trial, the evidence was sufficient to warrant the jury's conclusion that the defendant, whose confession to the killing was consistent with the forensic evidence, killed the victim and that he did so with malice and deliberate premeditation. [410-411]

At a murder trial in which there was evidence that the defendant had been drinking and was intoxicated at the time he spoke with the police and with the owner of the building in which the killing took place, the judge did not err in failing to conduct, sua sponte, a voir dire of those witnesses who testified concerning the defendant's statements regarding the killing, where the defendant's trial strategy not to contest the admission of the statements was not unreasonable, where defense counsel did not ignore the issue of voluntariness, and where the judge explored the defendant's decision not to suppress the statements. [411-414]

A defendant charged with murder failed to demonstrate that his counsel provided ineffective assistance by failing to obtain an independent psychiatric evaluation to determine the defendant's competence to stand trial and his lack of criminal responsibility, where appellate counsel neither requested an additional competency hearing, nor supported the defendant's motion for a new trial with affidavits from trial counsel or any postconviction psychiatric evaluations that would have enabled the motion judge to find that a serious question as to the defendant's competency at the time of trial existed; where the judge's ruling that the defendant was able to understand the proceedings against him, as well as the consequences of his choices, was supported by the record, as was his ruling that the defendant was able to (and did) consult with counsel and participate in his defense; and where the decisions of the defendant were not so unreasonable that the decisions themselves must be viewed as evidence of lack of competence to stand trial, or as evidence of lack of criminal responsibility. [414-416]

At a murder trial, the judge's instructions to the jury either were not in error or, if in error, did not give rise to a substantial likelihood of a miscarriage of justice, with regard to malice [416-418], deliberate premeditation [418], general and specific intent [418-419], consciousness of guilt [419-420], and a reference to the "most heinous" crime [420-421].

INDICTMENT found and returned in the Superior Court Department on June 27, 1991.

The case was tried before *John P. Forte*, J., and a motion for a new trial was heard by *Timothy S. Hillman*, J.

*Donald A. Harwood* for the defendant.

*Marguerite T. Grant*, Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. Convicted of deliberately premeditated murder, John A. Serino appeals from that judgment and from the denial of his motion for a new trial. He challenges the sufficiency of the evidence; argues that the judge failed to conduct, sua sponte, a voir dire on the voluntariness of his out-of-court statements; claims that trial counsel was constitutionally ineffective for failing to obtain an independent psychiatric evaluation of the defendant's competence to stand trial and his lack of criminal responsibility; and challenges various instructions to the jury. We affirm the conviction and the order denying the defendant's motion for a new trial. We conclude that there is no basis for granting relief under G. L. c. 278, § 33E.

1. *Facts.* The jury could have found as follows. In the early morning hours of June 11, 1991, the defendant killed the victim by manual strangulation. The victim — a twenty-nine year old woman who suffered permanent disability as a result of a hit-and-run accident — had begun dating the defendant two months prior to the murder. Shortly before the murder, they began living together in the single-family house in which the victim lived as a boarder.

The victim was killed following an argument after she and the defendant returned home from a party. The autopsy of the victim revealed multiple abrasions and contusions on her neck, hemorrhaging of the blood vessels in her eyes, and cyanotic (i.e., blue) fingernails — all consistent with death by manual strangulation. The medical examiner testified that it usually takes five to eight minutes for manual strangulation to result in death.

The police responded to the report of the victim's death, and concluded initially that the cause of her death was an overdose. They informed the defendant, who was present, that in all likelihood an autopsy would be performed. Later that same afternoon,

and after the police had left, the defendant told the owner of the house in which the victim lived that he would rather confess to killing the victim than have an autopsy performed on her. As he said this to the owner, the defendant imitated choking someone with his hands. The owner telephoned the police.

The police received the owner's telephone call just as officers were en route to his house, as the defendant had, minutes beforehand, telephoned the police himself and informed them that he had killed the victim. The police took the defendant into custody. On the way to the station, the defendant was not questioned, but said several times that he had killed the victim. At the police station, before questioning, a detective advised the defendant of his Miranda rights. The defendant was disruptive and refused to sign the Miranda warning card, but indicated that he was aware of his rights and wished to speak to the detective.

The defendant then described the circumstances of the killing, which we summarize. He explained that he and the victim each had consumed five or six beers on the night of June 10, and that around 11 P.M. or midnight, the victim wanted to leave her home. The defendant restrained her, and an argument ensued. After the victim lay down on the bed, the defendant got on top of her, put both his hands around her throat, and began to choke her for "about a minute." The defendant recalled that, while he was choking the victim, he looked at a digital clock and saw that the time was 1:38 A.M. Following the interview, the defendant was arrested.

2. *Sufficiency of the evidence.* At trial, the primary contested issue was the cause of death. There was evidence that, as a result of her earlier accident, the victim suffered from seizures. The defense was that the victim had choked and suffocated to death as a consequence of a seizure. Defense counsel vigorously cross-examined the medical examiner, who admitted that some of the autopsy results were consistent with choking and suffocating during a seizure. The autopsy revealed no evidence of obstruction of the victim's airway, nor any evidence that she had ingested any pills. Defense counsel also highlighted testimony from the police officers that their initial conclusion was that the victim had died from an overdose of medications. At the close of the Commonwealth's evidence, the defendant

moved for a required finding of not guilty, which the judge denied.

We reject the defendant's challenge to the sufficiency of the evidence. Malice, as it applies to deliberately premeditated murder, means an intent to cause death. The evidence of strangulation supported an inference that the victim's death was not instantaneous; according to the medical examiner's testimony, the victim's death would result only after choking for five to eight minutes. The jury could have inferred that death was the result of pressure applied to the victim's neck for several minutes. See *Commonwealth* v. *Bregoli*, 431 Mass. 265, 269 (2000) (evidence of death by strangulation "suppport[s] an inference that the victim's death was not instantaneous, but the result of pressure applied to her neck until she lost consciousness"). There was also evidence of premeditation in the method of death — sustained pressure by the defendant to the victim's neck. See *Commonwealth* v. *Stockwell*, 426 Mass. 17, 19 & n.2 (1997). Viewed in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), the evidence was sufficient to warrant the jury's conclusion that the defendant, whose confession to the killing was consistent with the forensic evidence, killed the victim and that he did so with malice and deliberate premeditation.

3. *Failure to conduct a voir dire on the voluntariness of the defendant's confessions.* There was evidence that the defendant had been drinking and was intoxicated at the time he spoke with the owner of the boarding house and with the police. However, the officers who interviewed him at the police station after he received his Miranda warnings testified that his faculties did not appear impaired; according to police, although the defendant was angry and agitated, he appeared coherent and seemed to know what he was talking about.

That same day, some twenty hours after the killing, a detective asked the defendant to speak with him again; he agreed to do so. According to the detective, the defendant appeared calm, relaxed, and slightly remorseful. The defendant was again informed of his Miranda rights. On this occasion he signed the Miranda warning form. He then repeated the same version of events that he earlier had related.

For the first time on appeal, the defendant claims that the judge should have conducted, sua sponte, a voir dire of those witnesses who testified concerning the defendant's statements regarding the killing.[1] The trial judge made no ruling on the voluntariness of the defendant's statements.[2] For the reasons we explain, there was no error.

It is settled law that due process requires that, where there is evidence that a confession or admission may have been made involuntarily, the trial judge must conduct a voir dire to determine whether it was in fact made voluntarily. See *Jackson v. Denno*, 378 U.S. 368, 376 (1964); *Commonwealth v. Benoit*, 410 Mass. 506, 511 (1991); *Commonwealth v. Harris*, 371 Mass. 462, 468 (1976). A judge has "a constitutional obligation to conduct a voir dire examination in the absence of the jury where the voluntariness of a confession is in issue and to make an affirmative finding of voluntariness before the jury are allowed to consider it." *Id.* at 469. See *Commonwealth v. Preece*, 140 Mass. 276, 277 (1885) ("When a confession is offered in evidence, the question whether it is voluntary is to be decided primarily by the presiding justice. If he is satisfied that it is voluntary, it is admissible; otherwise, it should be excluded").

On the record in this case, it was not error for the judge not to make a ruling on the issue, even though the judge had before him evidence that the statements may have been made involuntarily because the defendant was intoxicated. In most cases a judge makes a determination as to the voluntariness of a defendant's statement at a hearing on a motion to suppress the statement. In this case, however, the defendant explicitly

---

[1] In his motion for a new trial, the defendant raised the issue, intertwined with an argument that his trial counsel was ineffective for failing to ask for a ruling by the judge on the voluntariness of the various statements he made to the police. The motion judge, who was not the trial judge, considered the issue only in connection with the ineffective assistance of counsel argument. There was no motion for reconsideration. We therefore consider the claim as if raised for the first time on appeal.

[2] The Commonwealth suggests that the judge may have done so in an unrecorded lobby conference. Neither the defendant nor the Commonwealth requested that the conference be recorded, and the Commonwealth may not now rely on any such suggestion. We again recommend that unrecorded lobby conferences be avoided. See *Commonwealth v. Fanelli*, 412 Mass. 497, 501 (1992).

directed his attorney not to file a motion to suppress his statements.[3] Before the trial commenced, the prosecutor alerted the judge to the issue of voluntariness, pointing out that no motion to suppress had been filed. Trial counsel then informed the judge that he did not intend to raise the voluntariness of the statements; he said he would be "very comfortable" with an instruction to the jury that, before they could consider the defendant's statements, the jury had to find that the statements were voluntary. The judge conducted a colloquy with defense counsel and with the defendant in which the defendant indicated that he would be satisfied if the judge gave the "humane practice" instruction in his final charge to the jury. As the trial proceeded, the defendant did not request a voir dire when any witness testified concerning statements the defendant made, nor did he object when the prosecutor introduced in evidence the audiotape recording of his telephone call to the police or a videotape recording taken while the defendant was undergoing the booking procedure.

The decision not to move to suppress the statements or to request a voir dire of the witnesses was a considered and tactical one of the defendant. The defendant, in consultation with his attorney, may well have determined that the likelihood of suppression was small.[4] Cross-examination of the witnesses on the issue of voluntariness would afford them the opportunity to rehearse their responses to defense counsel's questions. Cf. *Commonwealth* v. *Drayton*, 386 Mass. 39, 42 (1982) ("The decision whether to request a voir dire or move to suppress was a tactical one, and defense counsel may have determined that the chance of success on a motion to suppress was too slight to justify the risks of affording the witnesses an opportunity to rehearse their testimony at a suppression hearing"). The defendant may also have concluded that it was to his benefit for the jury to hear his statements: the statements and audiotape

---

[3]The defendant submitted an affidavit to the judge indicating that he did not wish to file a motion to suppress. The judge conducted a colloquy with the defendant concerning his instruction to his attorney not to file such a motion.

[4]The defendant gave the same version of events over many hours, when any effects of alcohol would have dissipated, and after he had repeatedly received Miranda warnings.

and videotape recordings are evidence in support of his defense that he was too intoxicated to premeditate deliberately.

A defendant is free to decide how his case will be tried. See *Commonwealth* v. *Tevlin*, 433 Mass. 305, 316-317 (2001), and cases cited. Here the defendant's strategy not to contest the admission of the statements was not unreasonable. Counsel did not ignore the issue of voluntariness, and the judge also explored the defendant's decision not to suppress the statements. In these circumstances, it would be anomalous to require a judge to conduct a voir dire and inquire into the issue of voluntariness "where it might be contrary to the theory and strategy of the defendant." *Commonwealth* v. *Benoit, supra* at 513, quoting *Commonwealth* v. *Pratt*, 360 Mass. 708, 714 (1972). The judge was aware of and understood the humane practice doctrine, and discussed the doctrine with the defendant and trial counsel; he correctly instructed the jury that the Commonwealth had to prove beyond a reasonable doubt that a statement by the defendant was voluntary before they could consider it. There was no error.

4. *Ineffective assistance of counsel.* In his motion for a new trial and again on appeal, the defendant argues that his trial counsel rendered constitutionally ineffective assistance because he failed to obtain an independent psychiatric evaluation to determine the defendant's competence to stand trial and his lack of criminal responsibility. To prevail on this claim, the defendant must show that counsel's errors were "likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). The motion judge, who was not the trial judge, concluded that counsel was not ineffective. We agree.

As to the defendant's competency to stand trial, the Commonwealth bears the burden of proving, by a preponderance of the evidence, that a defendant is competent to stand trial. G. L. c. 123, § 15 (*d*). *Commonwealth* v. *Crowley*, 393 Mass. 393, 401-402 & n.2 (1984). The standard for determining whether a defendant is competent to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Commonwealth* v. *Russin*, 420 Mass. 309,

317 (1995), quoting *Dusky* v. *United States*, 362 U.S. 402, 402 (1960).

On two occasions before trial, once in March, 1992, and again two days prior to trial, a psychiatrist evaluated the defendant for competency pursuant to G. L. c. 123, § 15 (*a*). On each occasion, the psychiatrist was aware of the applicable competency standard and both times she applied that standard. She was unequivocal in her conclusion that the defendant was competent to stand trial.[5] On the first day of trial, the judge held a voir dire of the psychiatrist. The judge, aware of the applicable competency standard, concluded that the defendant was competent to stand trial. The defendant does not contest the standard that the judge applied in finding him competent, nor does he assert that the Commonwealth's psychiatrist was unqualified to form her opinion as to competence. Rather, he points to aspects of his own behavior during the pretrial proceedings that, he says, show that he was not competent prior to and during the trial because he suffered from a mental illness.

In essence, the defendant argues that an independent expert would have concluded that he was not competent to stand trial. He has produced no evidence to support that argument. In his motion for a new trial, appellate counsel requested funds for an independent psychiatric evaluation of the defendant. The motion judge properly denied the request. A defendant is not entitled to receive funds to prosecute a motion for a new trial, even where that motion raises a claim of ineffective assistance of counsel. G. L. c. 261, § 27C (4). See *Commonwealth* v. *Carter*, 429 Mass. 266, 270 (1999) ("Section 27C does not authorize a judge to allow costs in connection with the presentation of a new trial motion based on a claim of ineffective assistance of counsel"); *Commonwealth* v. *Davis*, 410 Mass. 680, 684 (1991).

[5]The issue of competency apparently had arisen because defense counsel was concerned about strategic decisions his client was making. There was evidence that the defendant had considered and rejected a plea of guilty to murder in the second degree. The psychiatrist noted that the defendant "decided that he cannot bring himself to plead guilty to something that he has no memory of. He understands that if he is found guilty of [first] degree, he will get a sentence of life without parole . . . . He wants to represent to the court that he has no memory of the events, for whatever the jury will make of that. He understands the risk he runs in doing so."

Appellate counsel neither requested another competency hearing, nor supported his motion for a new trial with affidavits from trial counsel or any postconviction psychiatric evaluations that would have enabled the motion judge to find that a serious question as to the defendant's competency at the time of trial existed. Cf. *Commonwealth* v. *Conaghan,* 433 Mass. 105, 110-111 (2000).

The judge's ruling that the defendant was able to understand the proceedings against him, as well as the consequences of his choices, is supported by the record, as is his ruling that the defendant was able to (and did) consult with counsel and participate in his defense. See *Commonwealth* v. *Federici,* 427 Mass. 740, 743-746 (1998); *Commonwealth* v. *Russin, supra* at 317. In light of the evidence of the defendant's competence to stand trial, it cannot be fairly stated that "better work might have accomplished something material for the defense" on this issue. *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). See *Commonwealth* v. *Hung Tan Vo,* 427 Mass. 464, 470 (1998) (because judge's finding of competency is supported by record, "a substantial likelihood of a miscarriage of justice does not exist concerning when and how the competency issue was raised; the ultimate outcome would have been the same").

The defendant further argues that, because he was not competent, his "strategic" choices — not to pursue a motion to suppress his statements and not to mount a defense of lack of criminal responsibility — were prejudicial to him. We were presented with a similar claim in *Commonwealth* v. *Federici, supra* at 744-745 & n.4. Here, as in that case, where the defendant has been found competent and has been fully advised beforehand of the consequences of his actions by both defense counsel and the judge, we see no reason not to honor the defendant's choices. His tactical choices did not succeed, but that is an insufficient basis on which to conclude that his counsel was ineffective. His decisions were not so unreasonable that the decisions themselves must be viewed as evidence of lack of competence to stand trial, or as evidence of lack of criminal responsibility.

5. *Jury instructions.* The defendant challenges various of the judge's instructions, which we examine in turn.

(a) *Malice*. The judge incorrectly instructed the jury that third prong malice is an intent "to do an act creating a plain and strong likelihood that . . . death or grievous bodily harm would follow."[6] See *Commonwealth* v. *Sires*, 413 Mass. 292, 303 n.14 (1992) (third prong of malice can only be satisfied by proof of "a plain and strong likelihood of death"). In his instructions on malice, the judge also used the "frame of mind" language, of which we disapproved in *Commonwealth* v. *Eagles*, 419 Mass. 825, 836 (1995), after the defendant's 1992 trial. The defendant did not object to these instructions, and our review is limited to whether the erroneous instructions give rise to a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E.

The jury convicted the defendant of murder in the first degree on a theory of deliberate premeditation. Only the first prong of malice can support a conviction of deliberately premeditated murder. The judge correctly instructed the jury on the first prong of malice, that it "includes any unexcused specific intent to kill." Any error in the instruction on the third prong of malice is nonprejudicial. See *Commonwealth* v. *Judge*, 420 Mass. 433, 441 (1995).

Moreover, the evidence did not raise a substantial issue concerning malice. The victim's injuries were inflicted in a manner that confirmed an intent to cause death: to cause her death the defendant's strangulation of the victim had to have been prolonged. See *Commonwealth* v. *Fitzmeyer*, 414 Mass. 540, 547-548 (1993) (intentional beating and strangling of elderly victim "involved the kind of risk that could only lead to a finding of malice"); *Commonwealth* v. *Garabedian*, 399 Mass. 304, 316 (1987), quoting *Commonwealth* v. *Medeiros*, 395 Mass. 336, 342 (1985) (strangling and throwing rocks at victim's face "quite 'likely to endanger life'").

Nor does inclusion of the now obsolete "frame of mind" language create a substantial likelihood of a miscarriage of justice. "[I]nstructions on malice that include both the three prong definition and an obsolete definition adequately convey the meaning of malice to the jury." *Commonwealth* v. *Murphy*, 426 Mass. 395, 401 (1998). Cf. *Commonwealth* v. *Caines*, 41

---

[6]The defendant requested that instruction.

Mass. App. Ct. 812, 816-817 (1996) (holding "frame of mind" language coupled with erroneous third prong malice instruction did not create substantial risk of miscarriage of justice where evidence created "a clear and plain likelihood of death"). The judge's instructions to the jury, considered as a whole, "adequately explained the concept of malice aforethought." *Commonwealth* v. *Morgan*, 422 Mass. 373, 382 (1996), and cases cited.

(b) *Deliberate premeditation.* In this 1992 trial, the judge's deliberate premeditation instructions to the jury were substantially the same as the instruction now contained in the Model Jury Instructions on Homicide (1999), issued after the trial, except that he did not include two sentences contained in the model jury instructions: "[D]eliberate premeditation excludes action which is taken so quickly that there is no time to reflect on the action and then decide to do it. The Commonwealth must show that the defendant's resolution to kill was, at least for some short period of time, the product of reflection." *Id.* at 9. The defendant argues that the omission of such a charge was erroneous. We do not agree.[7] The judge's instructions in this case on premeditation, which we need not recite in detail, made clear that the jury could convict the defendant of deliberately premeditated murder only if they found that he reflected on the decision to kill before taking action. See *Commonwealth* v. *Judge*, 420 Mass. 433, 441 (1995) (defining deliberate premeditation as requiring that defendant "act with the intent that his actions will cause death and that he acted with sufficient time (even if fleeting) to reflect on that consequence" [footnote omitted]).

(c) *General and specific intent.* The defendant argues that the judge instructed that a "reflex action" constitutes a general intent to murder, and that this instruction was erroneous. *Commonwealth* v. *Gunter*, 427 Mass. 259, 269 (1998). He also points out that the instruction on specific intent did not focus the jury on the requirement that "the defendant must have acted with purpose or have intended certain consequences." See *id.* at 269. On our review of these aspects of the jury instructions, we

---

[7]It is advisable that judges give the full instruction. See Model Jury Instructions on Homicide 8-10 (1999).

conclude that the judge adequately instructed that the Commonwealth had to prove the requisite state of mind beyond a reasonable doubt for them to find the defendant guilty of deliberately premeditated murder. The judge properly instructed the jury on the elements of premeditated murder, including that the defendant had to make the decision to kill and then commit the killing in furtherance of that decision. Any error in the instructions on general intent and any ambiguity in the instruction on specific intent do not give rise to a substantial likelihood of a miscarriage of justice. *Id.* at 268-269 (judges need not employ common-law terms of "specific" or "general" intent, so long as it is made clear to jury that "a defendant must not only have consciously intended to take certain actions, but that he also consciously intended certain consequences . . . to result from his actions").

Additionally, there was no error in instructing the jury that among the reasonable inferences they could draw from the evidence was "that a person intends the natural and probable consequences of an act that is done knowingly and voluntarily." The judge instructed on a "reasonable inference" that the jury could draw from the evidence, not on a "presumption." See *Commonwealth* v. *Callahan*, 380 Mass. 821, 825 (1980), quoting *Commonwealth* v. *Collins*, 374 Mass. 596, 600 n.2 (1978) (" 'traditional instruction that a person may be held to intend the natural and probable consequences of his conduct' must not be phrased so as to establish a presumption in favor of the Commonwealth which the defendant must overcome"). The charge repeatedly and correctly stated the Commonwealth's burden.

(d) *Consciousness of guilt.* In this case there was evidence of consciousness of guilt — the defendant's attempts to cover up the crime and his false statements to the police about how the victim died — but there was no evidence of flight. The judge nevertheless gave an instruction on flight as consciousness of guilt, similar to the instruction he had given in *Commonwealth* v. *Brown*, 414 Mass. 123, 126 n.3 (1993). In that case, we held that the instruction should not have referred to the possibility of evidence of the defendant's flight where there was no such evidence in the case. We held, however, "given the context of

the entire charge, including the judge's admonition that the jury could rely on any example of the consciousness of guilt only if they found that evidence of it existed in this case, and the absence of any jury argument by the prosecutor concerning evidence of flight, the error was not prejudicial." *Id.* at 127. Here, as in that case, the jury would have understood the reference to flight as but one example of a defendant's actions from which the jury could infer consciousness of guilt. The prosecutor in her closing argument did not argue that there was evidence of flight, and there was nothing else that would draw the jury in that direction. There was no substantial likelihood of a miscarriage of justice.

(e) *Reference to the "most heinous" crime language.* The defendant contends that the judge should not have used the language "most heinous" in his charge to the jury as follows:

> "Now, it will be your duty to return the verdict of the highest crime that the Commonwealth has proven. For example, if the Commonwealth has proven them all, that is, . . . murder in the first degree, . . . murder in the second degree, and . . . manslaughter, it will be your duty to return the most heinous crime. That would be, in the example I gave you, guilty of murder in the first degree."

Trial counsel objected to this aspect of the instruction.

The judge's use of the adjective "heinous" is not error. In the context of the charge as a whole, the jury would have understood that they should convict the defendant of the highest or most serious crime charged for which the Commonwealth had proved the elements beyond a reasonable doubt. There is no risk that the jury would have understood the judge to be expressing his view of what the verdict should be. To the contrary, the judge instructed the jury that, "if during the course of my charge you think I have hinted or intimated how you should find either a verdict or a fact, please disregard that. I hope I did not. If I did, it was strictly accidental."

To the extent that the defendant's objection is that the judge should not have charged the jury that they should convict of the highest crime proved, such a charge is proper. See *Commonwealth* v. *O'Brien*, 432 Mass. 578, 591 (2000); *Com-*

*monwealth* v. *Dickerson*, 372 Mass. 783, 797 (1977). The judge gave a forceful instruction on the presumption of innocence and the Commonwealth's burden of proof. The charge as a whole was balanced, and there was no risk that the jury misunderstood their duty to acquit if the Commonwealth failed to meet its burden.

6. *Relief under G. L. c. 278, § 33E.* We have reviewed the entire record pursuant to G. L. c. 278, § 33E, and conclude that there is no reason either to order a new trial or to reduce the verdict.

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*