## Vuthy Seng *vs.* Commonwealth.

Suffolk. October 7, 2005. - December 15, 2005.

Present: Marshall, C.J., Ireland, Spina, & Cordy, JJ.

*Practice, Criminal,* Competency to stand trial, Defendant's competency, Psychiatric examination, Assistance of counsel. *Due Process of Law,* Competency to stand trial, Assistance of counsel. *Constitutional Law,* Self-incrimination, Assistance of counsel.

A Superior Court judge did not abuse her discretion in ordering a criminal defendant to submit to an examination by an expert of the Commonwealth's choosing to evaluate his competency to stand trial after he had already been examined by a court-appointed expert, where G. L. c. 123, § 15 (*a*), permitted the judge to order the defendant to be examined by one or more experts, and did not preclude the Commonwealth from requesting an examination by an expert of its own choosing in the same proceeding [538-545]; moreover, the judge's order, as crafted, fully protected the defendant's rights against self-incrimination [545-548], and the order did not violate the defendant's right to counsel [548-549].

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on January 10, 2005.

The case was reported by *Cowin,* J.

*Larry R. Tipton* for the defendant.

*Loretta M. Smith,* Assistant District Attorney, for the Commonwealth.

Marshall, C.J. At issue in this case is whether a criminal defendant may be required to submit to an examination by an expert of the Commonwealth's choosing to evaluate his competency to stand trial. After a court-appointed expert concluded that Vuthy Seng (defendant) was not competent to stand trial, a judge in the Superior Court allowed the Commonwealth's motion that the defendant submit to a second competency examination to be conducted by an expert of its choosing, "subject," she ruled, "to the procedures set forth in

Mass. R. Crim. P. 14 (b) (2) (B)," 378 Mass. 874 (1979).[1] The defendant petitioned a single justice for relief, pursuant to G. L. c. 211, § 3, contending that the judge's order violated his statutory rights under G. L. c. 123, § 15, his privilege against self-incrimination, and his right to effective representation by counsel. The single justice reserved and reported the case on a statement of agreed facts and statement of the issue presented, namely, "whether the motion judge abused her discretion or committed an error of law by allowing on December 17, 2004, the Commonwealth's motion to have the petitioner examined for competency to stand trial by a psychiatrist of the Commonwealth's choosing." We conclude there was no abuse of discretion or other error of law. The case is remanded to the single justice for entry of an order affirming the ruling of the judge in the Superior Court.

1. *Factual background.* In 1997, the defendant was convicted

---

[1]Rule 14 (b) (2) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 874 (1979), concerns the "defense of lack of criminal responsibility because of mental disease or defect." Subsection (B), entitled "Examination," provides in pertinent part:

> "The examiner shall file with the court a written psychiatric report which shall contain his findings, including specific statements of the basis thereof, as to the mental condition of the defendant at the time the alleged offense was committed.

> "The report shall be sealed and shall not be made available to the parties unless (a) the judge determines that the report contains no matter, information, or evidence which is based upon statements of the defendant as to his mental condition at the time of or his criminal responsibility for the alleged crime or which is otherwise within the scope of the privilege against self-incrimination . . . or (c) during trial the defendant raises the defense of lack of criminal responsibility and the judge is satisfied that (1) the defendant intends to testify in his own behalf or (2) the defendant intends to offer expert testimony based in whole or in part upon statements of the defendant as to his mental condition at the time of or as to his criminal responsibility for the alleged crime.

> "If a psychiatric report contains both privileged and nonprivileged matter, the judge may, if feasible, at such time as he deems appropriate, make available to the parties the nonprivileged portions."

Mass. R. Crim. P. 14 (b) (2) (B) (iii).

of indictments charging murder in the first degree, armed assault with intent to murder, assault and battery, and possession of a firearm without a license. *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 538 (2002). We reversed the convictions on grounds not relevant here, and remanded the case to the Superior Court for a new trial. See *id.*

After remand, defense counsel moved for an evaluation of the defendant's competency to stand trial. On the same date, the Commonwealth moved, pursuant to G. L. c. 123, § 15 (*a*), for a competency evaluation by a psychiatrist of the Commonwealth's choosing. The judge allowed the defendant's motion, ordering that he be evaluated at Bridgewater State Hospital, and deferred action on the Commonwealth's motion. See G. L. c. 123, § 15 (*b*).[2]

A designated forensic psychologist of Bridgewater State Hospital, Dr. David W. Holtzen, filed his evaluation report with the court, concluding that the defendant was not competent to stand trial.[3] See G. L. c. 123, § 15 (*c*).[4] The Commonwealth then renewed its motion for an independent evaluation, which the judge allowed over the defendant's objection, ordering that "the Commonwealth may have the defendant examined for competence by an expert of its own choosing subject to the procedures set forth in Mass. R. Crim. P. 14 (b) (2) (B)." See note 1, *supra*. Further proceedings in the Superior Court were stayed pending resolution of this issue.

2. *Discussion.* It has long been established that a defendant who, through expert testimony, raises a defense of lack of

[2]General Laws c. 123, § 15 (*b*), states, in pertinent part: "After the examination described in paragraph (*a*), the court may order that the person be hospitalized at a facility . . . for a period not to exceed twenty days for observation and further examination, if the court has reason to believe that such observation and further examination are necessary in order to determine whether mental illness or mental defect have so affected a person that he is not competent to stand trial . . . ."

[3]Dr. Holtzen's report, dated December 2, 2004, stated that the defendant "is not competent to stand trial, is mentally ill, and is in need of psychiatric treatment in a suitable facility."

[4]Under G. L. c. 123, § 15 (*c*), "[a]t the conclusion of the examination or the observation period, the examining physician or psychologist shall forthwith give to the court written signed reports of their findings, including clinical findings bearing on the issue of competence to stand trial . . . ."

criminal responsibility must submit to an examination by an expert of the Commonwealth's choosing. *Blaisdell* v. *Commonwealth*, 372 Mass. 753 (1977). We recently held, in *Commonwealth* v. *Poissant*, 443 Mass. 558 (2005), that this rule does not apply in the context of proceedings under G. L. c. 123A, where two qualified examiners have examined the defendant and concluded that he is not sexually dangerous. The defendant contends, relying in part on *Commonwealth* v. *Poissant*, *supra*, that (1) the judge lacked authority under G. L. c. 123, § 15, to order a competency examination by an expert of the Commonwealth's choosing; (2) the compelled examination would violate his right against self-incrimination; and (3) the compelled examination would violate his right to counsel. Finding none of the defendant's arguments persuasive, we determine that the judge's order was within her discretion, that the judge crafted an order that fully protects the defendant's constitutional rights, and that any possible violation of the defendant's constitutional rights can be remedied at trial, should one occur.[5]

a. *Statutory authority.* General Laws c. 123, § 15 (*a*), provides:

> "Whenever a court of competent jurisdiction doubts whether a defendant in a criminal case is competent to stand trial or is criminally responsible by reason of mental illness or mental defect, it may at any stage of the proceedings after the return of an indictment or the issuance of a criminal complaint against the defendant, order an examination of such defendant to be conducted *by one or more qualified physicians or one or more qualified psychologists.* Whenever practicable, examinations shall be conducted at the court house or place of detention where the person is being held. When an examination is ordered, the court shall instruct the examining physician or psychologist in the law for determining mental competence to stand trial and criminal responsibility." (Emphasis added.)

---

[5] A finding that the defendant is not competent to stand trial does not necessarily result in a dismissal of the charges. See G. L. c. 123, § 15 (*d*) ("If the defendant is found incompetent to stand trial, trial of the case shall be stayed until such time as the defendant becomes competent to stand trial, unless the case is dismissed").

After an examination takes place, "the examining physician or psychologist shall forthwith give to the [judge] written signed reports of [his or her] findings, including the clinical findings bearing on the issue of competence to stand trial." G. L. c. 123, § 15 (*c*). If the examiner's report satisfies the judge that the defendant is competent to stand trial, the case may proceed in the usual course. G. L. c. 123, § 15 (*d*). Otherwise, the judge must hold a competency hearing. *Id.* Here, because the judge found that Dr. Holtzen's report raised a substantial doubt about the defendant's competency to stand trial (that is, it did not satisfy her that the defendant was competent), she ordered that a competency hearing be held.

Although G. L. c. 123, § 15 (*d*), provides that "[a] finding of *incompetency* shall require a preponderance of the evidence" (emphasis added), this court has held that the burden is on the Commonwealth to establish by a preponderance of the evidence that a defendant is competent. *Commonwealth* v. *Crowley*, 393 Mass. 393, 400 (1984). For this reason, and because in her view, the defendant's concerns based on the Fifth Amendment to the United States Constitution were resolved by "the strict requirements" of rule 14 (b) (2) (B), the judge allowed the Commonwealth's motion to have the defendant examined by an expert of its own choosing. A fair inference of her order is that the judge allowed the motion to enable the Commonwealth to present evidence tending to show the defendant's competency at the hearing. In other words, the Commonwealth's competency examination will not be conducted in order to determine whether a hearing is warranted, but to gather evidence.

The judge acted within her statutory authority.[6] By its terms the statute permits the judge to order a competency examination by "one or more" experts. See *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984) (statutory language is "the principal source of insight into legislative purpose"). See also *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934) (we interpret statute "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the

---

[6]We consider in this case only whether the Commonwealth is entitled to have the defendant examined for competence by one expert of its choosing where a court-appointed expert has concluded that the defendant is not competent.

language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished"). The fact that the defendant has been examined once does not preclude his being examined again by a different expert.

As to the identity of the experts, the statute says only that they must be "qualified physicians" or "qualified psychologists." See G. L. c. 123, § 1 (defining these terms).[7] It does not preclude the Commonwealth (or a defendant for that matter) from requesting an evaluation by an expert of its own choosing within the same proceeding. Cf. *United States* v. *Weston,* 36 F. Supp. 2d 7, 9, 12 & n.6 (D.D.C. 1999) (characterizing competency hearing under cognate Federal statute permitting more than one examiner "if the court finds it appropriate" as "adversarial proceeding" that contemplates "testimony about the defendant's present competency from both government and defense witnesses"). General Laws c. 123, § 15 (*a*), leaves to the judge's discretion the decision who shall examine the defendant: the statute expressly provides that the judge "may at any stage of the proceedings" order a competency examination, giving the judge considerable discretion to order any examination at all.

Further, the Commonwealth must affirmatively establish the defendant's competency to stand trial, *Commonwealth* v. *Crowley, supra* at 400,[8] and it is difficult to see how it can carry this burden here merely by cross-examination of Dr. Holtzen. The

---

[7]General Laws c. 123, § 1, defines the following:

" 'Qualified physician', a physician who is licensed pursuant to [G. L. c. 112, § 2,] who is designated by and who meets qualifications required by the regulations of the department [of mental health]; provided that different qualifications may be established for different purposes of this chapter. A qualified physician need not be an employee of the department or of any facility of the department."

" 'Qualified psychologist', a psychologist who is licensed pursuant to [G. L. c. 112, §§ 118-129,] who is designated by and who meets qualifications required by the regulations of the department, provided that different qualifications may be established for different purposes of this chapter. A qualified psychologist need not be an employee of the department or of any facility of the department."

[8]*Commonwealth* v. *Crowley,* 393 Mass. 393 (1984), was decided under an earlier version of G. L. c. 123, § 15, which also provided that "[a] finding of incompetency shall require a preponderance of the evidence." *Id.* at 401. The

statute does not expressly preclude the Commonwealth from calling its own expert, and that expert cannot form as credible an opinion of the defendant's competency without examining him. See *Baqleh* v. *Superior Court*, 100 Cal. App. 4th 478, 488 (2002) ("prosecution's forensic psychiatrist could not testify credibly . . . unless he or she had the same access to petitioner that the defense experts enjoyed").

The Legislature's granting of more than one examination on the issue of competency is similar to statutes in other jurisdictions. See, e.g., 18 U.S.C. § 4241 (2000) (incorporating by reference 18 U.S.C. § 4247[b], granting psychiatric or psychological examination by more than one expert of defendant for competency to stand trial); Cal. Penal Code § 1369(a) (Deering 1992) (permitting court appointment of "any other expert the court may deem appropriate," in addition to psychiatrist or licensed psychologist, to examine defendant for competency). It also comports with the practical reality that "psychiatry is a profession where experts often disagree," and a judge would benefit, in making difficult legal decisions, from the "opportunity to hear from more than one expert on the issue of the defendant's competency." *United States* v. *Weston, supra* at 15. See *Commonwealth* v. *Lamb*, 372 Mass. 17, 24 (1977), quoting *Commonwealth* v. *Smith*, 357 Mass. 168, 178 (1970) ("Judicial experience with psychiatric testimony makes it abundantly clear that it would be unrealistic to treat an opinion . . . by an expert on either side of [an] issue as conclusive").

The defendant counters that we should follow those courts in other jurisdictions that have held that, absent specific statutory authority, a judge cannot compel a defendant to be examined

*Crowley* court noted that the majority of other jurisdictions placed the burden of proving competency on the prosecution, and agreed that this was the correct rule. *Id.* at 400. The Commonwealth had conceded in that case that it bore the burden to prove competency, and the court therefore did not address the seemingly contrary statutory language that a finding of "incompetency shall require a preponderance of the evidence." See *id.* at 401 n.2. Since the *Crowley* decision, the burden has been on the Commonwealth to prove "competency." See, e.g., *Commonwealth* v. *L'Abbe*, 421 Mass. 262, 266 (1995); *Commonwealth* v. *Prater*, 420 Mass. 569, 573-574 (1995). That it is permissible for a State to require a defendant to prove incompetency, *Medina* v. *California*, 505 U.S. 437, 449 (1992), does not disturb our ruling in *Commonwealth* v. *Crowley, supra.*

for competency by a State-selected expert. The cases on which he relies are distinguishable from this case because of their different statutory schemes or rules. See *Bishop* v. *Caudill*, 118 S.W.3d 159, 163-164 (Ky. 2003) (State has no right to obtain independent competency examination of defendant where Legislature had included such procedure in statute governing defense of criminal responsibility, but not in statute governing competency)[9]; *State* v. *Garcia*, 128 N.M. 721, 726-727 (Ct. App. 2000) (no explicit statutory authority for ordering more than one evaluation, and State, on its motion, had not shown "good cause" to trigger application of rule requiring judge to order competency examination); *State* v. *Patty*, 563 S.W.2d 911, 913 (Tenn. Crim. App. 1977) (statute providing for competency examination is "discretionary and does not contemplate employment of a private practitioner . . . at state expense").[10] More persuasive are the decisions of other courts holding that the absence of statutory language specifically permitting examination by a prosecution expert is not determinative. See, e.g., *United States* v. *Weston, supra* at 11 & n.3, and cases cited (judge "possesses the inherent authority to order defendant to undergo a competency examination by a government expert, especially where, as here, the defendant has proffered that he is incompetent to proceed to trial"); *Baqleh* v. *Superior Court, supra* at 489 (although statutory scheme did not specify pretrial discovery that is allowable, "we must assume it contemplates that which is necessary to ensure a fair trial and [is] constitutionally permissible"); *People* v. *Broccolo*, 130 Misc. 2d 606, 608 (N.Y. County Ct. 1985) ("To say that the District Attorney is assured the right to a hearing and to contest a psychiatric determination, but is not afforded the right to obtain the necessary psychiatric evidence, is a contradiction"). See also Model

---

[9]In Massachusetts, the same statute, G. L. c. 123, § 15, sets forth the procedures for examinations to determine both competency and criminal responsibility. In contrast, Kentucky has separate statutes for competency and mental illness or insanity determinations. See *Bishop* v. *Caudill*, 118 S.W.3d 159, 161 (Ky. 2003).

[10]The defendant also relies on *State* v. *Zapetis*, 629 So. 2d 861 (Fla. Dist. Ct. App. 1993). In that case, the court denied review of an order denying the State's motion for a neuropsychological examination because the State had not met the standard for certiorari review of pretrial orders in criminal proceedings. See *id.* at 861.

Penal Code and Commentaries § 4.06(1) (1985) (if party contests finding by expert appointed by judge to evaluate criminal defendant's competency, that party may, in addition to cross-examining expert, present evidence on issue)[11]; Model Penal Code and Commentaries, *supra* at § 4.05 comment n.5, at 236 ("Given the divergent views among psychiatrists concerning mental disease, some authors have advocated deemphasizing the 'impartiality' of psychiatric testimony of court-appointed psychiatrists in favor of presenting the finder of fact with as much psychiatric information as possible").

As we recognized in *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 756 (1977), one purpose of the statute is "to prevent putting to trial an individual who . . . is not competent at the time of trial." See *Commonwealth* v. *Crowley*, 393 Mass. 393, 398 (1984), quoting *Drope* v. *Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial"). On the other hand, the public has a strong interest in ensuring that a claim of incompetency to proceed to trial is carefully scrutinized. See W.R. LaFave, Criminal Law § 1.2(e), at 18 (2d ed. 2003) ("The broad aim of the criminal law is, of course, to prevent harm to society . . . . This it accomplishes by punishing those who have done harm . . . to others"). By permitting a judge considerable flexibility to accommodate both interests, G. L. c. 123, § 15 (*a*), ensures the integrity of both aspects of our system of criminal justice. *Commonwealth* v. *Poissant*, 443 Mass. 558 (2005), on which the defendant relies, is inapposite. That case concerned commitment as a sexually dangerous person under G. L. c. 123A. Our holding was predicated on the specific provisions of that detailed statutory scheme. Among other things, G. L. c. 123A, § 13 (*a*),

---

[11]The explanatory note to Model Penal Code § 4.06(1) states in part: "If a party contests the report [resulting from the psychiatric examination of the defendant on the issue of competency by an expert appointed by the court under Model Penal Code § 4.05], there is a hearing at which that party may summon and cross-examine psychiatrists who joined in the report, and offer independent evidence." Model Penal Code and Commentaries § 4.06 explanatory note, at 241 (1985).

provides that when a judge has determined that there is probable cause to believe that the defendant is sexually dangerous, he or she is required to submit to examinations by two qualified examiners. We determined that "the Legislature did not intend to require the defendant to submit to examination by anyone other than the two qualified examiners." *Id.* at 563. In contrast, the statutory scheme here is less detailed and grants considerable discretion to a judge to determine how many experts should examine the defendant to determine his competency.

b. *Self-incrimination.* The defendant contends that a competency examination by a Commonwealth expert would violate his rights against self-incrimination under the United States and Massachusetts Constitutions. He does not explain, however, how a competency examination, focusing on his current mental state, would require him to make statements tending to show his guilt of the crime. See, e.g., *Commonwealth* v. *Russin*, 420 Mass. 309, 317 (1995), quoting *Dusky* v. *United States*, 362 U.S. 402, 402 (1960) ("The standard for determining competency to stand trial is 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him' "). An examination to determine competency has a "limited, neutral purpose." *Estelle* v. *Smith*, 451 U.S. 454, 465 (1981). It differs significantly from an examination intended to assess responsibility at the time of the crime, see, e.g., *Blaisdell* v. *Commonwealth, supra* at 759-760, or from one to assess sexual dangerousness, see *Commonwealth* v. *Poissant, supra* at 564. A competency examination is not directed to the ultimate issue to be decided — whether the defendant is guilty of the crime, or whether the defendant is a sexually dangerous person. A competency examination does not bear on the defendant's guilt, but on his or her current ability to understand the proceedings and participate in the defense. These are collateral to, and "cannot directly result in[,] the functional equivalent of a criminal adjudication of guilt." *Baqleh* v. *Superior Court, supra* at 495. See *Commonwealth* v. *Serino*, 436 Mass. 408, 414 (2002) (setting forth standard for determining whether defendant is competent to stand trial); *United States* v. *Collins*, 491 F.2d

1050, 1053 (5th Cir. 1974) ("Competency to stand trial at a particular time goes not to the mental condition existing at the time of the alleged offense; it is concerned solely with whether the defendant is then able to confer intelligently with counsel and to competently participate in the trial of his case"). An expert evaluating the defendant's competency to stand trial would not need to ask whether he committed the crimes, but would ask of what he was accused, who the important people are in the court room and what their roles are, or what will be the consequences if he is found guilty, all with a view to evaluating his understanding of the proceedings and his ability to participate in his defense. See *Commonwealth* v. *Serino, supra.* As we noted, "[e]xaminations . . . , properly limited to the issue of competency to stand trial, would not ordinarily involve the problems of privilege here described." *Blaisdell* v. *Commonwealth, supra* at 769.

There is of course always some possibility that a defendant would make incriminating statements during the course of a competency examination. The judge recognized this possibility and imposed on the Commonwealth compliance with the "strict requirements" of rule 14 (b) (2) (B). By its terms rule 14 (b) (2) pertains to "the defense of lack of criminal responsibility because of mental disease or defect at the time of the alleged crime," and not to competency to stand trial. See note 1, *supra.* We see no reason why a judge cannot resort to that rule's provisions in the context of a competency determination to protect a defendant's legitimate constitutionally based concerns.

Rule 14 (b) (2) (B) (ii) provides that any "statement, confession, or admission, or other evidence of or obtained from the defendant during the [competency] examination" may not be disclosed to the "prosecutor or anyone acting on his behalf unless so ordered by the judge." The report of any expert examining the defendant for competency may not be disclosed to the Commonwealth unless "the judge determines that the [competency expert's] report contains no matter, information, or evidence which is based upon statements of the defendant as to his mental condition at the time of or his criminal responsibility for the alleged crime or which is otherwise within the scope of the privilege against self-incrimination." Mass. R. Crim. P.

14 (b) (2) (B) (iii). Not only does the rule direct the judge to protect the defendant's privilege against self-incrimination by withholding any such material from the Commonwealth, but the judge can, if she determines that she is uncertain whether any information in the report falls within the scope of the privilege, review the material in camera with defense counsel alone. Cf. *Commonwealth* v. *Lyons*, 426 Mass. 466, 468 n.5 (1998) (judge ordered defense counsel to submit to prosecutor copies of competency evaluation of defendant by forensic psychologist at Bridgewater State Hospital "in redacted form"). In short, the Commonwealth will have no access to any of the defendant's statements that may, even arguably, incriminate him.

The judge's order made no reference to G. L. c. 233, § 23B, but we agree with the Commonwealth that to the extent the defendant's privilege against self-incrimination is implicated, he will also be protected by the immunity provisions of that statute.

Under G. L. c. 233, § 23B:

> "In the trial of an indictment or complaint for any crime, no statement made by a defendant therein subjected to psychiatric examination pursuant to [G. L. c. 123, §§ 15 or 16,] for the purposes of such examination or treatment shall be admissible in evidence against him on any issue other than that of his mental condition, nor shall it be admissible in evidence against him on that issue if such statement constitutes a confession of guilt of the crime charged."

This excludes from evidence "inculpatory statements constituting admissions short of a full acknowledgment of guilt," as well as "evidence discovered as 'fruits' of [the defendant's] compelled statements," and prevents "the possible use of his involuntary statements made in the course of the examination for purpose of impeachment" (citations omitted). *Blaisdell* v. *Commonwealth, supra* at 763.[12] The protection is not diluted because the expert is selected by the Commonwealth.

---

[12]The Commonwealth correctly does not claim that the defendant waived his privilege against self-incrimination because defense counsel raised the question of the defendant's competency. It asserts, however, that if and when the defendant seeks "to introduce expert testimony based on any examination

In *Blaisdell* v. *Commonwealth, supra*, we determined that § 23B is not coextensive with the privilege against self-incrimination because it does not "protect[] the defendant from furnishing evidence bearing on his mental or emotional condition." *Id.* at 764. However, the examination at issue was one to determine criminal responsibility at the time of the offense, not competency to stand trial. See *id.* at 769 (distinguishing competency examinations). The defendant's "mental or emotional condition" at issue in a competency evaluation is his or her current condition, which is irrelevant to guilt or innocence. If a defendant undergoing a competency examination makes a statement about his or her mental condition at the time of the crime, that would constitute an "inculpatory statement[] constituting [an] admission[] short of a full acknowledgment of guilt," inadmissible under G. L. c. 233, § 23B, as interpreted in *Blaisdell* v. *Commonwealth, supra* at 763.

In the circumstances of a competency examination, G. L. c. 233, § 23B, together with the judge-imposed strictures of rule 14 (b) (2) (B), protects the defendant's privilege against self-incrimination. See *Blaisdell* v. *Commonwealth, supra* at 769. Cf. *Baqleh* v. *Superior Court, supra* at 498 ("the Fifth Amendment is inapplicable at a [competency] hearing because the judicially declared immunity . . . provides the defendant all the protection against self-incrimination he or she needs").

c. *Right to counsel.* The defendant argues that the judge's order violates his right to counsel under art. 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution.[13] That right includes the assistance of an attorney "in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed." *Estelle* v. *Smith*, 451 U.S. 454, 471 (1981). It may be questionable whether the defense attorneys can give effective advice relative to the

of the defendant other than the Bridgewater State Hospital examination, the defendant would waive any privilege." We need not and do not address this hypothetical point.

[13]The Commonwealth points out that the defendant did not raise this issue in the Superior Court. He did, however, raise it in his G. L. c. 211, § 3, petition.

competency examination, or whether the defendant can validly waive any of his rights, given the serious doubts raised by Dr. Holtzen about the defendant's ability to work with his attorneys and participate in his defense. See, e.g., *United States* v. *Huguenin*, 950 F.2d 23, 27 (1st Cir. 1991) ("if the defendant is in fact incompetent, his decision to give or withhold consent to an examination cannot be considered valid"). Cf. *Commonwealth* v. *Hilton*, 443 Mass. 597, 607 n.5 (2005) (although competency to stand trial is distinct from ability to understand and waive Miranda rights, defendant's "inability to comprehend such matters as the role of the judge and jury, even with repeated explanation, was highly probative as to whether [the defendant] would have understood Miranda warnings"). However, the defendant makes no claim that his counsel was unable to advise him regarding the first court-ordered competency examination. The consequences of the second examination will be no different. Nothing in the judge's order forecloses counsel from contesting any action taken by the judge, including disclosure of anything contained in the report of the Commonwealth's expert that she may permit. The judge should order that evidence offered by the expert will not include any incriminating statements, and any written report will be redacted, either by the expert or by the judge, before it is made available to the Commonwealth. The defense attorney will be in as good a position as the Commonwealth to use the results of the examination at the subsequent competency hearing.

Also, as we discussed earlier, if the defendant is found competent, any statements he made during the competency examination would not be admissible at trial, G. L. c. 233, § 23B. If the defendant is found not competent to stand trial, any "waiver" of his rights would have no legal effect. See, e.g., *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971) (conviction or sentencing of person incompetent to stand trial violates due process). See *Blaisdell* v. *Commonwealth, supra* at 763; Mass. R. Crim. P. 14 (b) (2) (B); G. L. c. 233, § 23B. "Because [the defendant] is adequately protected, there is no Sixth Amendment right." *Baqleh* v. *Superior Court, supra* at 505.

3. *Conclusion.* We have determined that there was neither abuse of discretion nor any other error of law in ordering the

defendant to be examined for competency to stand trial by a psychiatrist of the Commonwealth's choosing. We remand the case to the single justice for entry of an order affirming the ruling of the judge in the Superior Court.

*So ordered.*