NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13785

S.W.  vs.  COMMONWEALTH.


Suffolk.     January 7, 2026. - May 21, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Georges, Dewar,
& Wolohojian, JJ.


Supreme Judicial Court, Superintendence of inferior courts.  Due
    Process of Law, Substantive rights, Competency to stand
    trial, Pretrial detainees, Commitment.  Practice, Criminal,
    Competency to stand trial, Defendant's competency.  Bail.



    Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on June 5, 2025.

    The case was heard by Wendlandt, J.


    Michaela R. Martin Strout, Committee for Public Counsel
Services, for the petitioner.
    Jocelyn A. McGrath, Assistant District Attorney, for the
Commonwealth.
    Tatum A. Pritchard, Justin M. Woolf, Deborah A. Dorfman,
Jennifer Honig, Steven Schwartz, & Kathryn Rucker, for
Disability Law Center, Inc., & others, amici curiae, submitted a
brief.


    GEORGES, J.  This case, together with a companion case also

decided today, R.D. v. Commonwealth, 497 Mass.     (2026),

concerns the lawfulness of detaining a criminal defendant[1] without bail pending the availability of a hospital bed to effectuate a competency evaluation pursuant to G. L. c. 123, § 15 (b) (§ 15 [b]). In addition, the case implicates the underlying order requiring the defendant's hospitalization for that evaluation (commitment order). Because no bed was available at the facility designated to conduct the evaluation, a judge ordered the defendant detained without bail until a bed became available (detention order). The defendant challenged both orders by filing a petition in the county court pursuant to G. L. c. 211, § 3. The single justice vacated the detention order, concluding that no statutory or common-law authority permits detention without bail to facilitate a competency evaluation pursuant to § 15 (b), but denied relief as to the commitment order. The defendant appealed.

We first decide, in the exercise of our discretion, to reach the merits of the detention order, as it presents an important question that implicates a fundamental liberty interest and that may generate confusion in the trial courts. Second, although the defendant's challenge to the commitment order ordinarily would not be before us -- given the available

---

[1] Although this appeal stems from S.W.'s G. L. c. 211, § 3, petition in the county court, for ease of reference, we refer to her as the defendant.

review in the Appellate Division of the District Court
(Appellate Division) -- we likewise exercise our discretion to
reach its merits.  Finally, we conclude that the single justice
neither erred nor abused her discretion in vacating the
detention order and in denying relief from the commitment order.
Accordingly, we affirm.[2]

Background.  We summarize the relevant facts, reserving
additional detail for discussion of the specific issues.

On June 2, 2025, a criminal complaint issued in the
Pittsfield Division of the District Court Department charging
the defendant with one count of assault, in violation of G. L.
c. 265, § 13A (a).  At arraignment that same day, a judge
ordered the defendant to undergo a competency evaluation,
pursuant to G. L. c. 123, § 15 (a) (§ 15 [a]), with a court
clinician.

Later that day, the judge held a hearing on the results of
that evaluation.  At the hearing, the clinician opined that the
defendant, suffering from "severe" untreated mental illness, was
not fully aware of the criminal charge against her or its legal
consequences.  According to the clinician, the defendant

_____

[2] We acknowledge the amicus brief in support of the
defendant submitted by the Disability Law Center, Inc., the
Mental Health Legal Advisors Committee, the Center for Public
Representation, and the Massachusetts Association for Mental
Health.

expressed the delusional belief that she was "married to King Charles" and that because she was the "Queen of England," she was "not supposed to be . . . in Court."  The clinician also observed significant delays in the defendant's responses, suggesting she was experiencing internal stimuli such as auditory hallucinations.  Although the defendant reported having a psychiatrist at a local mental health facility, the clinician noted that the identified provider had not worked there for years.  The defendant also told the clinician that she was receiving counselling from her "husband's people," referring to King Charles.  The defendant, previously diagnosed with bipolar disorder, did not appear to be taking any prescribed medications to treat her symptoms.

Based on these observations, the clinician did not "believe [the defendant] demonstrate[d] the skills necessary for competence to stand [t]rial" and recommended hospitalization pursuant to § 15 (b).  The clinician further informed the judge that no hospital beds were available and that one likely would not be available for "several weeks."

The judge ordered the defendant committed pursuant to § 15 (b), expressly finding that "hospitalization for observation and examination [was] necessary and the least restrictive means of determining the [d]efendant's competence to

stand [t]rial." The judge further ordered that the defendant be detained without bail "until a bed [became] available."

Three days later, the defendant filed a petition in the county court pursuant to G. L. c. 211, § 3, seeking review of both the commitment and detention orders. A single justice allowed the petition in part and denied it in part. Exercising her discretion to reach the merits, the single justice concluded that the judge did not err in ordering a competency evaluation pursuant to § 15 (b), but that the detention order was unlawful. This appeal followed.[3]

Discussion. A single justice considering a petition under G. L. c. 211, § 3, undertakes a two-step analysis. See Commonwealth v. Fontanez, 482 Mass. 22, 24, 28 (2019). At the first step, the single justice determines, in the exercise of discretion, whether review of the petition's substantive merits is warranted. See id. at 24. At this threshold stage, the

_____

[3] While the petition was pending, a different District Court judge ordered the defendant released on personal recognizance but left the commitment order in place. Following oral argument in this appeal, the underlying criminal charge was dismissed. Assuming these developments render the defendant's challenge to the detention order moot, we nonetheless exercise our discretion to decide the issue, as it presents a question of public importance that is capable of repetition while evading review. See, e.g., Agostini v. Commonwealth, 497 Mass. 242, 244 (2026). By contrast, the challenge to the commitment order is not moot because "the defendant has a surviving personal interest in adjudicating whether the nature of her confinement [under § 15 (b)] was wrongful." Commonwealth v. A.Z., 493 Mass. 427, 430 (2024).

single justice may deny relief without reaching the merits if the petitioner "has an adequate alternative remedy" or if the matter is not sufficiently important and extraordinary to warrant the exercise of our general superintendence.  Id. at 24-25.  Even where review of the petition's merits is not warranted, however, the single justice retains discretion to proceed to the second step.  See, e.g., Commonwealth v. Clark, 454 Mass. 1001, 1002 (2009).  At the second step, the single justice considers the merits to determine whether to grant relief.  See Fontanez, supra at 28.

On appeal, we review a single justice's decision for clear error of law or abuse of discretion.  See Vasquez v. Commonwealth, 481 Mass. 747, 751 (2019).  We therefore consider the single justice's decisions at each step of the G. L. c. 211, § 3, framework.

1.  First step.  At the first step, the single justice concluded that review under G. L. c. 211, § 3, was appropriate because the right "to be free from physical restraint" is a "paradigmatic fundamental right."  Commonwealth v. A.Z., 493 Mass. 427, 431-432 (2024), quoting Garcia v. Commonwealth, 487 Mass. 97, 102-103 (2021).  Although the single justice did not address whether the defendant had any adequate alternative remedies, the Commonwealth now contends that relief under G. L.

c. 211, § 3, was inappropriate because the defendant had adequate alternative means to obtain review of both orders.

We need not resolve the Commonwealth's adequate alternative remedy argument as to the detention order.[4]  Like the single justice, we retain discretion to reach the merits even where an adequate alternative remedy may exist.  See Garcia, 487 Mass. at 101 n.9 (declining to address whether defendant had adequate alternative remedy where, in part, "the single justice exercised his discretion to reach the merits of the petition"); Vaccari, petitioner, 460 Mass. 756, 759 (2011) (addressing merits, notwithstanding that adequate alternative remedy existed, where single justice reached merits).

Exercising our discretion to reach the merits of the detention order is appropriate.  As the single justice recognized, the order implicates a fundamental liberty interest.  See Fontanez, 482 Mass. at 28 (importance of "fundamental constitutional concerns" weighed in favor of reviewing petition's merits).  Further, the question whether a judge may detain a defendant without bail pending the availability of a hospital bed for a § 15 (b) evaluation is a matter of public importance likely to recur and capable of causing uncertainty in

---

[4] The Commonwealth argues that the detention order could have been reviewed by the Superior Court under G. L. c. 276, § 58, seventh par., or by the Appellate Division under G. L. c. 123, § 9 (a).

the trial courts.  See Commonwealth v. Ware, 471 Mass. 85, 93
(2015) ("we have exercised our general superintendence powers to
resolve . . . matter[s] of public interest that may cause
further uncertainty within the courts" [quotation and citation
omitted]).

As for the commitment order, we agree with the Commonwealth
that the defendant had an adequate alternative remedy:  an
appeal to the Appellate Division.  General Laws c. 123, § 9 (a),
provides that "[m]atters of law arising in commitment hearings
. . . or incompetency for trial proceedings in a district court
may be reviewed by the appellate division of the district
courts."  We have previously held that an appeal pursuant to
G. L. c. 123, § 9 (a), is an adequate alternative means of
remedying an allegedly unlawful § 15 (b) commitment order.  See
Matter of an Impounded Case (No. 1), 493 Mass. 1001, 1002
(2023).[5]  Accordingly, relief from the commitment order
ordinarily would be denied on this ground.  See McMenimen v.
Passatempo, 452 Mass. 178, 185 (2008), S.C., 458 Mass. 1007
(2010) and 461 Mass. 279 (2012) (our jurisprudence "consistently
reinforces the principle . . . that the extraordinary remedy of

_____

[5] Because we decline the defendant's invitation to revisit
or overrule Matter of an Impounded Case (No. 1), and because we
exercise our discretion to reach the merits of the commitment
order, we need not address the defendant's additional arguments
as to why review in the Appellate Division is inadequate.

general superintendence is meant for situations where a litigant has no adequate alternative remedy").

Nonetheless, as with the detention order, we conclude that, in the circumstances presented, it is appropriate to exercise our discretion to reach the merits of the commitment order, especially where the single justice exercised her discretion to do so.  See N.M. v. Commonwealth, 478 Mass. 89, 93 (2017) ("Although we now have concluded that there is no right to review as a matter of law, . . . we exercise our discretion to reach the merits in this case").  See also Garcia, 487 Mass. at 101 n.9; Vaccari, petitioner, 460 Mass. at 759.

2.  Second step.  In assessing the single justice's ruling on the merits, "we must, in effect, address the same legal issue[s] presented to the single justice" (quotation and citation omitted), Trustees of Boston Univ. v. Clerk-Magistrate of the Cambridge Div. of the Dist. Court Dep't, 495 Mass. 56, 62 (2024) -- namely, the propriety of the detention and commitment orders.  We begin with the detention order.

a.  The detention order.[6]  Whether a judge has the authority to order the detention of a criminal defendant pending the

_____

[6] Although no party raises the issue, it is not clear whether the defendant can challenge the detention order in this court, as she was not aggrieved by that portion of the single justice's judgment.  See G. L. c. 231, § 114.  Indeed, the defendant prevailed before the single justice on the lawfulness of the detention order.  Nonetheless, for the reasons we set

availability of a hospital bed to complete a competency evaluation under § 15 (b) presents a question of law and statutory interpretation, which we review de novo.  See Garcia, 487 Mass. at 101.  We begin, as we must, with the plain language of G. L. c. 123, § 15.  "Where the language of a statute is clear, . . . courts must give effect to its plain and ordinary meaning and . . . need not look beyond the words of the statute itself" (citation omitted).  Commonwealth v. Rossetti, 489 Mass. 589, 593 (2022).

The single justice concluded, and we agree, that there is no statutory authority for the detention order.  General Laws c. 123, § 15, does not authorize pretrial detention of a criminal defendant in aid of a competency evaluation under § 15 (b).  Nothing in the statutory text contemplates, expressly or implicitly, the detention of a defendant solely because the resources necessary to conduct the evaluation are unavailable.  Nor does any other statute confer such authority.  For example, G. L. c. 276, § 58, does not permit detention based on the unavailability of hospital beds or delays in conducting a

---

forth in greater detail in R.D., 497 Mass.    , we exercise our discretion to address the issue, even though it is "not strictly before us" (citation omitted).  This is appropriate where, as here, "the case has been fully briefed on the merits, . . . there is a public interest in obtaining a prompt answer to the question, and . . . the answer to be given is reasonably clear."  Brown v. Guerrier, 390 Mass. 631, 632 (1983).

competency evaluation.  See Commonwealth v. Vieira, 483 Mass. 417, 420-421 (2019) (describing circumstances in which functional equivalent of pretrial detention may be imposed under G. L. c. 276, § 58).

The judge was likewise without inherent authority to issue the detention order.  The judiciary's inherent authority extends only to those powers necessary "to allow judges to perform core functions necessary for the proper administration of justice" (citation omitted).  Makis M. v. Commonwealth, 494 Mass. 23, 33 (2024).  The power to detain defendants pretrial while they await hospitalization under § 15 (b) is not among those functions.  Such detention does not advance adjudication but instead operates as a judicial response to the Commonwealth's inability to implement the statutory commitment scheme. Addressing that problem requires "a level of policy-making typically reserved for the Legislature."  Id. at 34.  Cf. id. at 33 (establishment of pretrial remediation programming for incompetent juveniles is beyond scope of court's inherent authority); Department of Mental Retardation v. Kendrew, 418 Mass. 50, 54-55 (1994) (order placing intellectually impaired criminal defendant in long-term residential program was not within District Court judge's inherent authority).

Indeed, the circumstances in which a judge may order pretrial detention are "limited," Brangan v. Commonwealth, 477

Mass. 691, 703, S.C., 478 Mass. 361 (2017), and this is not one of them.  Here, the defendant was deprived of liberty not on any statutorily recognized ground, or any proper exercise of inherent judicial authority, but solely because no hospital bed was available.  Even if this circumstance reflects a "gap" in the governing statutory schemes, the judge was not empowered to "take matters into [her] own hands in the name of resolving [the defendant's] criminal case[] efficiently."  Makis M., 494 Mass. at 34.

In short, no matter how well intentioned, a judge may not detain a criminal defendant without bail solely because a hospital bed is unavailable to conduct a competency evaluation. The detention order was therefore unlawful, and the single justice correctly vacated it.

b.  The commitment order.  Generally, we review a judge's decision to order a competency evaluation under § 15 (b) for an abuse of discretion.  See G. L. c. 123, § 15 (b) (judge "may" order defendant's hospitalization).  Cf. Commonwealth v. Carson C., 489 Mass. 54, 58 (2022) (noting discretion provided by use of "may" in § 15 [a]).  However, "[w]here the sufficiency of the evidence at an evidentiary hearing is challenged, we scrutinize without deference the propriety of the legal criteria employed . . . and the manner in which those criteria were applied to the facts" (quotation and citation omitted).  Matter of J.P., 494

Mass. 654, 668 (2024).  We also review de novo a defendant's constitutional challenge to a § 15 (b) order.  Cf. Matter of F.A., 494 Mass. 673, 676 (2024).  Thus, while the ultimate decision to order hospitalization is reviewed for abuse of discretion, the governing legal standards and constitutional requirements are subject to independent review.  As for the underlying factual findings, we accept them unless clearly erroneous, recognizing that the judge "is in the best position to weigh the evidence, assess the credibility of witnesses, and make findings of fact."  Matter of a Minor, 484 Mass. 295, 302 (2020).

On appeal, the defendant first challenges the judge's determination that hospitalization under § 15 (b) was the least restrictive means of assessing competency.  She next argues that the judge lacked authority to order a further competency evaluation under § 15 (b).  We address these arguments in turn, beginning with the governing legal framework.

i.  Legal framework.  To be competent to stand trial, "a criminal defendant must have sufficient ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him" (quotations and citation omitted).  Makis M., 494 Mass. at 29.  Where a defendant's competency is in doubt, "a judge may order that the defendant be [initially]

examined by a qualified psychologist or physician." Id., citing
G. L. c. 123, § 15 (a).  If the judge has reason to believe that
further examination and observation are necessary, the judge
"may order that the person be hospitalized at a facility" for no
more than twenty days.[7]  G. L. c. 123, § 15 (b).  At the
conclusion of that period, the examiner must provide a report
setting forth "the clinical findings bearing on the issue of
competence."  G. L. c. 123, § 15 (c).  If the defendant is found
competent, the case proceeds; if not, the proceedings are stayed
"unless the case is dismissed."  G. L. c. 123, § 15 (d).

Beyond the statutory framework, a judge's § 15 (b)
commitment order constitutes a significant deprivation of
liberty and therefore must comport with substantive due process.
See A.Z., 493 Mass. at 427-428, 431-432.  Accordingly, a judge
must find, "by clear and convincing evidence, that
hospitalization is the least restrictive means available to
determine adequately a criminal defendant's competency to stand
trial."  Id. at 428.  The Commonwealth bears the burden of that
showing.  Id. at 432.  Expert testimony may be used to
demonstrate the need, for example, that "long-term observation

---

[7] This twenty-day period may be extended for up to an
additional twenty days if "an examining qualified physician or
an examining qualified psychologist believes that observation
for more than twenty days is necessary."  G. L. c. 123,
§ 15 (b).

in a hospital setting as opposed to sporadic outpatient examinations is necessary to adequately determine whether a defendant is competent." Id. at 433. However, expert or clinical evidence is not required, see Matter of J.P., 494 Mass. at 666-667, as "other types of evidence," such as the defendant's "fail[ure] to comply with mental health counselling" or "a history of not appearing in court or for various treatment programs," may be used, A.Z., supra.

ii. Least restrictive means. The judge concluded, by clear and convincing evidence, that hospitalization for observation and further examination was "the least restrictive means of determining the [d]efendant's competence to stand [t]rial." The record supports that determination. The clinician described the defendant as suffering from severe, untreated mental illness, marked by delusional beliefs and diminished ability to understand the nature and legal consequences of the charge against her. The defendant was not engaged in treatment, was not taking medication, and expressed beliefs indicating that she did not recognize either the need for care or the legitimacy of the proceedings. On this record, the judge concluded that an outpatient evaluation was not feasible and that further observation in a secured, structured setting was necessary to assess competency.

The defendant's contrary arguments do not undermine that conclusion.  The judge did not clearly err in any of her factual findings, or rely on any single factor.  Rather, she considered the totality of the circumstances, including the defendant's mental health condition, her lack of treatment, and her inability or unwillingness to engage meaningfully in the evaluation process.  In these circumstances, the judge did not err in determining that hospitalization pursuant to § 15 (b) was the least restrictive means of assessing competency.  Accordingly, the single justice did not err or abuse her discretion in denying relief from the commitment order.[8]

iii.  <u>Authority for § 15 (b) evaluation</u>.  The defendant further contends that the judge lacked authority to order a further competency evaluation under § 15 (b) because the court clinician had already opined, following a brief initial evaluation under § 15 (a), that the defendant was not competent

---

[8] The defendant raises several additional arguments concerning the least restrictive means analysis, none of which requires extended discussion.  Her reliance on <u>Garcia</u>, 487 Mass. at 105, which concerns the "likelihood of serious harm" standard, is misplaced, as that case does not govern competency determinations under § 15 (b).  Nor is there merit to her contention that the judge impermissibly shifted the burden of proof; the Commonwealth may satisfy its burden through testimony of a court clinician, and it did so here.  See <u>A.Z.</u>, 493 Mass. at 433.  Finally, to the extent that the defendant challenges the weight given to her lack of treatment, that factor is properly considered as part of the over-all assessment whether outpatient evaluation is a viable option.

to stand trial.[9]  This argument misconstrues the statutory scheme.

The statute expressly contemplates that further examination may be ordered where the court has reason to believe that additional observation is necessary.  Just as an initial examination of the defendant "does not preclude his being examined again by a different expert" under § 15 (a), Vuthy Seng v. Commonwealth, 445 Mass. 536, 541 (2005), S.C., 456 Mass. 490 (2010), the fact that a defendant has already been examined under § 15 (a) does not, by itself, preclude further examination under § 15 (b).  To the contrary, § 15 (b), expressly authorizes "further" examination.  G. L. c. 123, § 15 (b).  The statutory framework thus establishes complementary, sequential procedures

_____

[9] The court clinician recommended that the defendant be hospitalized under § 15 (b) both to further evaluate her competency and to allow her to receive psychiatric treatment. As to the latter reason, the defendant argues, and the Commonwealth does not dispute, that a § 15 (b) evaluation cannot be based "simply upon the fact that a defendant is experiencing symptoms of psychosis and might benefit from inpatient treatment."  We agree that "the function of G. L. c. 123, § 15, is to provide procedures to determine a person's competency -- not to remediate incompetency" or to otherwise provide a criminal defendant with mental health treatment.  Makis M., 494 Mass. at 31.  Here, the judge's findings were not based on whether the defendant would benefit from inpatient treatment; rather, she found that "hospitalization for observation and examination [was] necessary and the least restrictive means of determining the [d]efendant's competence to stand [t]rial."

for assessing competency, rather than mutually exclusive alternatives.

Moreover, at every stage of this process, the determination of competency is "a legal, not a medical, judgment" entrusted to the judge.  Commonwealth v. Jones, 479 Mass. 1, 14 (2018).  "The law should not, and does not, give the opinions of experts . . . the benefit of conclusiveness" (citation omitted).  Id. Accordingly, the clinician's initial opinion did not foreclose the judge's independent determination that further evaluation was warranted.  The judge therefore had statutory authority to order a further competency evaluation under § 15 (b).

Conclusion.  For the reasons stated, we conclude that the judge did not err in ordering the defendant's competency evaluation pursuant to G. L. c. 123, § 15 (b), but that the detention order was unlawful.  Accordingly, the single justice did not abuse her discretion or commit a clear error of law in vacating the detention order and declining to disturb the § 15 (b) commitment order.

Judgment affirmed.